HERBERT CLARK GILSON ET AL., RECEIVERS, PROSECU-
TORS, v. J. CHARLES APPLEBY.

Argued June 7, 1910—Decided November 7, 1910.

When stock in a corporation has been issued as full paid, and it is
sought to enforce further liability of a stockholder upon the
ground that the stock was in fact issued for property at an over-
valuation, there is no debt due for which an attachment will lie
until an order has been made by the Court of Chancery ascer-
taining the amount of the stockholder's liability.

On *certiorari.*

Before Justices SWAYZE, PARKER and VOORHEES.

For the prosecutors, *Merritt Lane.*

For the defendant, *Hartshorne, Insley & Leake.*

The opinion of the court was delivered by

SWAYZE, J. The plaintiffs issued an attachment out of the
Hudson Circuit Court founded upon an affidavit of Gilson that
the prosecutor owed the plaintiffs a debt in the sum of $49,000,
as nearly as deponent could specify. Upon a rule to show cause
why the attachment should not be quashed, testimony was
taken, and it appeared that the alleged debt was a liability as a
stockholder for stock which had been issued as full paid by the
corporation, of which the plaintiffs were upon its insolvency
appointed receivers, and thereupon the Circuit judge quashed
the writ. We are now asked to review his action. It is obvious
that the liability of a stockholder upon stock which by the
agreement between him and the corporation has been issued as
full paid is very different from the liability upon stock which
is subject to no such contract. The statute provides, section
21, that where the whole capital of a corporation shall not have
been paid in and the capital paid shall be insufficient to satisfy
its debts and obligations, each stockholder shall be bound to

pay on each share held by him the sum necessary to complete the amount of such share as fixed by the charter of the corporation, or such proportion of that sum as shall be required to satisfy such debts and obligations. Whether or not the receiver of an insolvent corporation could maintain a suit for the full amount of the stock where nothing had been paid thereon and a less sum would suffice to satisfy the debts and obligations is a question not presented in the present case. Confessedly, in this case, something was paid on account of the stock. The value of the property, which was transferred to the corporation by way of payment, may be in dispute, but the corporation took it as the equivalent of the par value of the stock. The receivers say it is worth only five per cent. of that amount, but the stockholder in any event can be liable only for a portion of the par of his stock, and that portion under the statute is such a proportion as shall be required to satisfy the debts or obligations. This necessitates an ascertainment of the amount paid on the stock and the amount of the debts and obligations; and before the receivers can recover at all they must set aside the agreement by which the corporation issued the stock and the stockholder took it as full paid. As Vice Chancellor Pitney said in *See* v. *Heppenheimer,* 3 *Robb.* 36 (at *p.* 82) : "In an action at law the complainant would find himself confronted with the certificate of stock, apparently issued with due formality, declaring on its face that it was full paid and unassessable. No action could be maintained in the face of that contract under seal until it was disposed of and annulled. Whether that could be done in a court of law may well be doubted. It is enough to say that it is clearly the province of a court of equity to relieve the complainant under those circumstances." The rule thus stated by the Vice Chancellor must equally apply where it is conceded that the company took the property as the equivalent of the full par value of the stock even if that is not expressed in the certificate. Chancellor McGill said in *Habberd* v. *Southwestern Land and Cattle Co.,* 10 *Dick. Ch. Rep.* 18 (at *p.* 31) : "Such a contract is binding upon the company and its shareholders, but as the capital stock constitutes a trust fund for the pay-

ment of debts, it cannot be given away from the demands of creditors, and hence the holders of bonus stock may be required to pay for it in satisfaction of the demand of creditors, after the exhaustion of all other assets, upon the ground that its issuance to them was a fraud in law upon the creditors." That fraud, however, must first be ascertained. In accordance with these views, it has been held by the Court of Errors and Appeals in *Cumberland Lumber Co.* v. *Clinton Hill Manufacturing Co.*, 12 *Id.* 627 (at *p.* 629), that "when the business of a corporation has been abandoned and the corporation is insolvent, subscribers for or holders of its stock, not paid for, have no further obligation with respect thereto than to pay so much of what is unpaid on the stock as will satisfy the claims of corporate creditors and meet the expenses of winding up its affairs. The proper tribunal to ascertain the amount necessary for these purposes is a court of equity, since courts of law have no procedure adapted to the marshaling of assets and liabilities requisite in such a calculation;" and in that case an order of the Court of Chancery assessing the stock for the full amount unpaid, being more than enough to satisfy the debts, was set aside. The court said: "Our conclusion is that it was the duty of the court below to determine judicially, before ordering an assessment, what proportion of the unpaid subscriptions would probably be needed to meet the liabilities and to confine the levy accordingly." When the Court of Errors and Appeals came to deal with the same corporation, after the Court of Chancery had ascertained the amount necessary to pay debts, it was set up in an action at law upon the assessment that the right of the receiver to recover was barred by the statute of limitations; but the court held that the statute did not begin to run until the assessment had been made by the Court of Chancery. It said: "It [the assessment] could not be considered as payable until the creditor's claim had been established and it had been ascertained that the corporation had no assets outside of these stock subscriptions to pay that debt. * * * Unpaid subscriptions to stock are assets, and the corporation being insolvent, the existence of creditors subjects these liabilities to the rules applicable

to funds held in trust. Statutes of limitations do not commence to run in respect to them until after a call or assessment has been made." These quotations suffice to show that there is no debt due for which an attachment would lie until after an order has been made by the Court of Chancery ascertaining the amount of the stockholder's liability. The receivers had, therefore, no right to issue this writ of attachment.

That the affidavit is not conclusive of the right to the attachment is sufficiently established by our authorities. *Day* v. *Bennett,* 3 *Harr.* 287; *Shadduck* v. *Marsh,* 1 *Zab.* 434; *Heckscher* v. *Trotter,* 19 *Vroom* 419.

We think the Circuit judge was quite right in quashing this attachment, and his order is therefore affirmed, with costs.