44 N.J. Super. 370 (1957)
130 A.2d 645
HERMAN SEIDEN AND DAVID EISENBERG, PLAINTIFFS-APPELLANTS,
v.
OSCAR FISHTEIN, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 11, 1957.
Decided March 29, 1957.
*372 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Samuel A. Sharff argued the cause for plaintiffs-appellants (Mr. Albert Kushinsky, of counsel).
Mr. William E. O'Connor, Jr., argued the cause for defendant-respondent (Messrs. Novins & Novins, attorneys; Mr. Robert J. Novins, of counsel).
The opinion of the court was delivered by CLAPP, S.J.A.D.
Appeal is taken by the plaintiffs from an order quashing a writ of attachment. The attachment had issued out of the Superior Court, Law Division, upon *373 affidavits submitted by them in an endeavor to meet the requirements of N.J.S. 2A:26-2, subd. a:
"An attachment may issue out of the superior court * * *.
(a) Where the facts would entitle plaintiff to an order of arrest before judgment in a civil action * * *."
Further see N.J.S. 2A:15-42.
The writ was quashed because of an alleged insufficiency in these affidavits. It is averred therein that "plaintiffs and defendant in February 1955 entered into a partnership agreement whereby the three of them were to become associated with one G. Crassas in the real estate business of Central Park Development Co., a corporation of New Jersey," the three to share equally in the profits and losses "of said venture." Needless to say, this is an inapt, obscure statement; whether the plaintiffs and defendant became joint adventurers with the corporation, or whether some other arrangement was agreed upon, we have no means of knowing.
But it is further alleged in the affidavits that Crassas had an option to purchase for $28,000 the interests (whatever they were) of the plaintiffs and defendant in this venture and that in September or October 1955 he exercised the option, paying defendant $18,000 in cash and $10,000 by "the liquidation" of a claim due Crassas from the defendant and the plaintiff Seiden. In addition it is alleged therein that not only has the defendant failed and refused to turn over to plaintiffs "their share of the proceeds," but he has falsely stated that he has not received any moneys in this partnership venture.
The Law Division seems to have been of the view that, so far as appears in the affidavits, defendant was entitled to appropriate to himself whatever Crassas had paid him. The affidavits are indeed sketchy, but we think it inferable therefrom that Crassas bought out the entire interest of the plaintiffs and defendant in the venture for $28,000 free and clear of claims; and that since the three of them were to share equally in the profits and losses, they presumably were to share equally in the $28,000. Rossie v. Garvan, 274 F. *374 447, 453 (D.C. Conn. 1921). Each of the three therefore became entitled to $9,333.33. However as above stated, a benefit was conferred on Seiden and Fishtein by Crassas' cancellation of their debt to him in the amount of $10,000. If we assume that Seiden and Fishtein were bound to contribute equally toward the payment of this debt (but cf. 2 Williston, Contracts (rev. ed. 1936), § 345), it may be inferred that the plaintiffs and defendant are entitled to share in the $18,000 as follows: Eisenberg, $9,333.33; Seiden, $4,333.33; and Fishtein, the remaining $4,333.34.
Where, as here, the affidavits submitted by plaintiffs, upon which an attachment has been granted, are assailed on a motion to quash, the plaintiffs are entitled to the benefit of all inferences fairly deducible therefrom. Mueller v. Seaboard Commercial Corp., 5 N.J. 28, 32 (1950). We think the affidavits before us make out a prima facie case. Original R. & R. Empire Pickle Works v. G. Arrigoni & Co., etc., 28 N.J. Super. 405, 409 (App. Div. 1953). On several occasions we have expressed our entire disapproval of the persistency today of the former practice in attachment under which writs were quashed on a technical basis, without any regard for the merits and without granting leave to file additional affidavits, where they are appropriate. R.R. 4:77-3; Whiteman Food Products Co. v. Prodotti Alimentari, 31 N.J. Super. 277, 280 (App. Div. 1954).
There is another question in the case. The affidavits, by reason of their very sketchiness, raise some doubt as to whether under our former system of courts, plaintiffs' claim against defendant would have been legal or equitable in nature. We will assume it is equitable. Savage v. Dowrie, 111 N.J. Eq. 108 (Ch. 1932); Davis v. Minch, 80 N.J.L. 214 (Sup. Ct. 1910). The question thus presented is whether the writ will issue under the statutes relied upon here (that is, as above indicated, N.J.S. 2A:26-2, subd. a, taken in conjunction with N.J.S. 2A:15-42) in connection with an equitable claim. Was N.J.S. 2A:26-2 designed to allow an attachment to issue only as follows: in case of an equitable claim under clause d (for the former equitable *375 practice, see Ippolito v. Ippolito, 3 N.J. 561, 568 (1950)), and perhaps clause e thereof; and in case of a legal claim only under clauses a, b, c and e thereof (for the earlier practice, see N.J.S.A. 2:42-5 and 2:42-72)?
We will deal only with clause a. The language of that clause and of its predecessor provision, L. 1948, c. 358, § 3, subd. a, departs materially from that found in the earlier statutes from which it was drawn, N.J.S.A. 2:42-5, subd. c and 2:42-72, subd. a; under that clause, an attachment will issue where the plaintiff is entitled to an order of arrest before judgment in a "civil action"  the designation given by our rules (R.R. 4:2) to the present single form of action into which the former action at law and the former suit in equity have been merged. In view of the sweep of the language, we see no good reason for limiting the clause to legal claims.
But that clause is operative, in a contractual action, only when a capias ad respondendum would issue under N.J.S. 2A:15-42. So the next question is, would a capias issue thereunder as to an equitable claim? That statute, it will be observed, was also revised so as to bring it into conformity with our present system of courts. Cf. N.J.S.A. 2:27-72. We think it would be entirely without warrant for us to attempt to impress upon the terms of the revised statute a distinction between legal and equitable claims, so as to restrict that statute to legal claims where the action is in the Superior Court. The whole trend of our jurisprudence is opposed to such a construction. Whether N.J.S. 2A:15-42 should be made applicable only to claims upon which a money judgment is demanded, need not be decided now; for in this case the plaintiffs seek a money judgment.
We conclude then that it matters not that plaintiffs' claim against defendant is equitable. We need not consider whether the issuance of the writ is supportable under clause a, b, c or d of N.J.S. 2A:15-42; no one raises the question. However, we might call attention to clause b (on which plaintiffs rely); unlike clauses a and c, it seems not to be limited to defendant's own property. We might also call *376 attention to the cases holding that under clause d a demand is deemed to have been fraudulently incurred where the defendant converts to his own use property which has been entrusted to him. Jordan v. Hoffman, 126 N.J.L. 100, 104 (Sup. Ct. 1941), and cases cited. Compare Haggerty v. Badkin, 72 N.J. Eq. 473, 491 (Ch. 1907) and In re Ewan, 7 N.J. Misc. 837 (Ch. 1929), both holding that where a partner wrongfully appropriates to his own use assets belonging to the partnership, a capias ad satisfaciendem would issue out of Chancery.
Defendant claims that an attachment does not lie against a debtor residing in this State, who is within the reach of ordinary process. However, that is an immaterial matter where the facts would entitle the plaintiff to an order of arrest. N.J.S. 2A:26-2, subd. a; Leventon v. Davison, 102 N.J.L. 144, 147 (E. & A. 1925). Nor does it matter that the defendant here owns real estate in the State, worth more than the plaintiffs' claim, on which execution could be levied.
We observe that the writ of attachment, and the order on which it is based, call for the attachment of $15,333, whereas according to the papers before us, as we have indicated above, it would appear that perhaps only $13,666.66 is due ($9,333.33 to Eisenberg, plus $4,333.33 to Seiden).
Reversed, and remanded.