UNITED STATES STEEL CORPORA-TION, a New Jersey corporation, Plaintiff,

v.

COMMERCIAL CONTRACTING CORPO-RATION, a foreign corporation, Defendant.

Civ. A. No. 11458.

United States District Court
D. New Jersey.

Nov. 11, 1958.

Lenox, Giordano & Lenox, Richard J. S. Barlow, Jr., Trenton, N. J., for defendant, for the motion.

FORMAN, Chief Judge.

The plaintiff, United States Steel Corporation (hereinafter called Steel), a New Jersey corporation, on August 19, 1957, engaged in a contract with the defendant, Commercial Contracting Corporation (hereinafter called Commercial), a corporation of Michigan, not licensed to do business in New Jersey, for construction work on the Sheet and Tin Division of its Fairless Works at Fairless Hills, Pennsylvania, for which the plaintiff agreed to pay $418,000. The contract has been completed and plaintiff concedes that it has not paid a balance of $20,900 due from it to the defendant.

In February 1958, Joseph Rommell, an employee of Commercial, instituted a suit against Steel alone in the Superior Court of New Jersey, alleging that he sustained personal injuries during the course of work under the contract between Steel and Commercial due to negligence of the former.

On or about September 22, 1958, plaintiff Steel instituted this suit against Commercial in the Superior Court of New Jersey, Law Division, Mercer County. Its complaint, verified by the affidavit of its Vice President Edward C. Myers, alleged in substance that the injuries of which Joseph Rommell complained in his suit against Steel were caused solely by the negligence of Commercial or by Rommell himself, and that it had neither caused nor contributed to them. It further charged that its contract with Commercial required the latter to assume in its behalf the defense of the suit by Rommell, and to indemnify it pursuant to Paragraphs 6, 13, 15 and 16, which are set forth below.[1] It also charged that in

Stryker, Tams & Horner, Burtis W. Horner, Newark, N. J., for plaintiff, contra.

---

1. "6. In addition to its other remedies, Owner may withhold and retain from time to time out of moneys due Contractor hereunder, amounts sufficient fully to reimburse and compensate itself for any loss or damage which it sustains, or may sustain, as a result of any default or any breach of any of the provisions of this agreement by the Contractor or by reason of any other claims Owner or any Division or Subsidiary of Owner may have against Contractor whether or not arising from this contract."

"13. Contractor shall provide and pay, and require his subcontractors, if any,

the event that there was a determination of negligence in the Rommell suit, imputed or attributable to Steel by reason of the contract between it and Commercial or otherwise then the plaintiff would be entitled to indemnity and recovery against the defendant.

By way of relief it demanded damages in whatever sum Steel may be required to pay in the Rommell action with interest, costs and attorneys' fees; a declaration of the rights and obligations of the parties to the contract; a declaration of its rights to withhold the $20,900 conceded to be due from it to Commercial to satisfy any judgment against it by Rommell and a declaration of its right to withhold from the said moneys sufficient to satisfy its costs and expenses, including lawyers' fees in defending the Rommell suit.

A copy of the contract was annexed to the complaint and affidavit and on plaintiff's application a writ of attachment was ordered by Judge Arthur S. Lane to issue out of the Superior Court of New Jersey against the rights and credits of Commercial in the sum of $20,900, pursuant to which a levy was made on the money by Steel in its own hands. Another order was then made by Judge Lane providing for personal service upon Commercial outside of New Jersey.

On October 10, 1958, Commercial removed the suit from the Superior Court

to provide and pay, and to secure the payment of:

"(a) Compensation for occupational diseases and for injuries sustained by or death resulting to employees of Contractor and his subcontractors as required by law, including the laws of each state wherein any work hereunder is performed and where employment contracts of such employees were made.

"(b) Contributions and payments with respect to employees of Contractor and his subcontractors to state unemployment compensation funds when and as required by such state unemployment compensation laws.

"Contractor shall furnish to Owner's Purchasing Agent satisfactory evidence that Contractor and his subcontractors have complied fully with all of the requirements of law and shall save harmless Owner from and against any and all actions, claims, damages and costs resulting from their failure fully to comply with all such laws."

"15. Contractor hereby irrevocably waives any rights he may now have or which he may acquire during the operation of this Agreement to file liens or charges against Owner or Owner's property.

"Contractor shall also pay, satisfy and discharge all mechanics', materialmen's and other liens, and all claims, obligations and liabilities which may be asserted against Owner or its property by reason of, or as a result of any acts or omissions of Contractor, his employees, representatives, licensees or suppliers, or his subcontractors, or the employees or suppliers of his subcontractors, in connection with, or relating to the performance of this contract."

"16. The safety of all persons employed by Contractor and his subcontractors on Owner's premises, or any other person who enters upon Owner's premises for reasons relating to this contract, shall be the sole responsibility of Contractor. Contractor shall at all times maintain good order among his employees and shall not employ on the work any unfit person or anyone not skilled in the work assigned to him. Contractor shall confine his employees and all other persons who come onto Owner's premises at Contractor's request or for reasons relating to this contract and his equipment to that portion of Owner's premises where the work under this contract is to be performed or to roads leading to and from such work sites, and to any other area which Owner may permit Contractor to use.

"Contractor shall take all reasonable measures and precautions at all times to prevent injuries to or the death of any of his employees or any other person who enters upon Owner's premises. Such measures and precautions shall include, but shall not be limited to, all safeguards and warnings necessary to protect workmen and others against any conditions on Owner's premises which could be dangerous and to prevent accidents of any kind whenever work is being performed in proximity to any moving or operating machinery, equipment or facilities, whether such machinery, equipment or facilities are the property of or are being operated by, the Contractor, his subcontractors, the Owner or other persons."

of New Jersey to this court on the ground of diversity.

Later Commercial gave Steel notice of a motion for an order quashing and dismissing the writ of attachment issued in the cause and for dismissal of the levy and of the cause upon the ground that the Superior Court was without jurisdiction to make the order authorizing the issuance of the writ of attachment; that the order authorizing the issuance of the attachment was contrary to the New Jersey statutes relating to attachments; that the affidavit upon which the attachment was issued is defective in that the proofs are insufficient to justify the issuance of the attachment as a matter of law.

It is this motion that is now before me after briefing and argument by counsel for the respective parties, Commercial appearing specially therefor.[2]

During the course of the argument it became known that Steel moved before the Superior Court of New Jersey, in the Rommell case, to bring in Commercial as a third party defendant. When apprised of the removal of the attachment proceedings to this court and of this motion, the Superior Court stayed its disposition of the third party defendant motion pending a determination of the present motion by this court. It is obvious—and Steel frankly concedes that it is doing everything it can to achieve a consolidation of the issues raised in the Rommell case with those raised in its complaint against Commercial in the same court.

■ The attack of Commercial upon Steel's suit is two pronged. First, it contends that jurisdiction cannot be obtained over a non-resident defendant by a plaintiff issuing a writ of attachment against property in its possession allegedly belonging to the defendant. Secondly, that

the affidavit submitted by Steel upon its application for the issuance of the writ of attachment was defective in form and substance.

As to the first of these considerations there is a dearth of authority in New Jersey. Decisions in other jurisdictions are in conflict.[3]

Commercial argued that an attachment proceeding is a summary and extraordinary remedy in derogation of the common law from which it follows that strict compliance with statutory provisions is mandatory. Cases frowning upon the practice have held tightly to this theory or that the objective of garnishment (apparently used interchangeably with attachment) was to reach property or rights in the hands of a third person only.[4]

The source of the right to attachment in New Jersey is its Attachment Act N.J.S.A. 2A:26–1 et seq. and R.R. 4:77–1 et seq. It is silent on the specific right of a plaintiff to attach in his own hands property of a non-resident defendant. The particular provision under which Steel acted is as follows:

> "An attachment may issue out of the superior court, any county court or county district court upon the application of any resident or non-resident plaintiff against the property, real and personal, of any defendant in any of the following instances:
>
> \*   \*   \*   \*   \*   \*
>
> "b. Where the defendant absconds or is a nonresident of this state, and a summons cannot be served on him in this state; \* \*" N.J.S.A. 2A:26–2.

The language is non-restrictive and could hardly be couched in broader terms. It

2. That Commercial appears specially is gleaned from Steel's brief, page 3.

3. Verry v. Barnes, 154 Minn. 252, 31 A.L.R. 711; 61 A.L.R. 1458. Cf. 38 C.J.S. Garnishment § 33, p. 231, wherein the author concludes that under the generally accepted view "courts decline to

permit the plaintiff to garnishee himself."

4. Emery v. C. D. Beck & Co., 1942, 124 W.Va. 766, 22 S.E.2d 458; Gerber v. Ogle Coal Co., 1928, 195 Wis. 578, 218 N.W. 361, 57 A.L.R. 838; First National Bank of Minot v. Brehmer, 1927, 56 N.D. 215, 215 N.W. 918.

is in harmony with the express policy of the statute enunciated in the introductory provision of the law, as follows:

"This chapter shall be liberally construed, as a remedial law for the protection of resident and nonresident creditors and claimants." N.J. S.A. 2A:26-1.

In the light of the New Jersey statutory directive toward liberal construction I find no reason to deny to Steel the right to attach Commercial's money in its hands merely because Steel, itself, holds the money, when it is clear that absent other factors, Steel would encounter no difficulty in attaching the same money if it were held by a third party. I am left respectful of, but unpersuaded by the authorities cited by Commercial to the contrary.

■ As to the other prong of Commercial's attack revolving around the sufficiency in form and substance of the affidavit [5] of the Vice President of Steel, Mr.

---

5. Revised Rules of New Jersey, Superior Court

"4:77-1 Issuance of Attachment; Levy; Venue.

"(a) Every action of attachment shall be proceeded upon in accordance with this rule. Upon proof to the satisfaction of the court, establishing plaintiff's right to the writ, the court shall make an order directing the issuance of the writ and fixing the amount of property to be attached, and also, if the court in its discretion so directs, requiring the plaintiff to post a bond prior to the issuance of the writ, with sufficient sureties to indemnify defendant for all damages resulting from the attachment and taxed costs of the action, if the action is dismissed, or if judgment thereon is given for defendant. Such proof shall be by affidavit entitled in the cause then proposed or then pending and made pursuant to Rule 4:44-4. Upon the filing with the court of the affidavit, the order and, if any be required, the bond, the clerk shall issue a writ, in duplicate, which shall be addressed to the sheriff of the county wherein the property to be attached is located or found. Further writs may be issued prior to judgment on further affidavit and order. The sheriff shall make the levy within 30 days from the date of the writ, (1) in the case of real estate, by endorsing the same upon the writ, (2) in the case of personal property other than choses in action, by serving a certified copy of the writ upon the person holding the same or by taking the same into custody, (3) in the case of choses in action, by serving a certified copy of the writ upon the person owing the same, or (4) in the case of legacies or distributive shares in an estate of a decedent, by serving a certified copy of the writ upon the fiduciary. The sheriff shall make a true inventory and appraisement of the property attached, shall endorse upon the writ and the duplicate thereof the levy made by him, and shall annex thereto a copy of the inventory and appraisement. He shall file the same with the court, and mail notice of the levy to the plaintiff or his attorney, within 5 days after the levy.

"(b) If an attachment shall issue, an order for bail shall not be made.

"(c) The venue shall be laid by the plaintiff in a county in which the whole or a portion of the property affected is situated in conformance with Rule 4:3-2.

"(d) If the property to be attached is situated in more than one county, a writ of attachment shall issue to the sheriff of each county wherein the property to be attached is located."

"4:77-3. Further Proceedings; Appearance; Judgment.

"Except as otherwise provided in Rule 4:77, the practice and procedure shall be as in other civil actions. In addition to other powers of amendment the court may, at any stage of the proceedings, permit submission of additional affidavits. Any person claiming the property attached may proceed in the action on order to show cause as stated in Rule 4:85, and any person having a claim against the defendant, whether his claim is due or not, may, on affidavit made pursuant to Rule 4:44-4 and upon order of the court, be admitted as an applying claimant under the attachment. The defendant, at any time before final judgment, may enter an appearance in the action, in which event (a) no applying claimants may thereafter intervene, (b) the lien of the attachment, unless discharged as hereinafter provided, shall continue in favor of the plaintiff and the applying claimants, (c) proceedings with respect to the attached property may be had as if no appearance had been entered, and (d) any judgment in favor of the plaintiff and applying claimants shall be general. If the defendant does not enter an appearance, any judgment shall be special against the attached property only. The

Edward C. Myers, to support the attachment action, it may be that it is deficient in some details. Essentially, however, the affidavit sets out the contract noted above; the institution of the action against Steel by Rommell; negligence upon the part of Commercial or Rommell, but none by Steel, and Commercial's failure to respond to Steel's demand that it undertake the defense of the Rommell suit. The omission of such details as the source of the knowledge of the affiant concerning the alleged injuries to Rommell is not a substantial defect.[6]

■ To be entitled to a writ of attachment a plaintiff is not required to set up in his affidavit more than a prima facie case.[7] There may well be questions as to whether Commercial committed itself to indemnify Steel in contingencies outside the precise area of workmens' compensation under Paragraph 13 and mechanics' and materialmen's liens under Paragraph 15, but there can be no doubt that it committed itself to "the sole responsibility" for "the safety of all persons employed by * * *" it on Steel's premises under Paragraph 16 of the contract.[8] In this suit Steel has charged that it was Rommell's own or Commercial's negligence that caused Rommell's injuries and not Steel. If Steel is called upon to pay for that damage by reason of a legal theory, such as ownership of the property, then it charges Commercial has breached Paragraph 16 and is liable to Steel.

Thus it would appear that the issuance of the writ of attachment is supported by the affidavit, the contract, and Rommell's suit against Steel. Taken together they establish that by the terms of the contract Commercial was responsible for the safety of its employees while on the property of Steel; that Rommell, one of its employees, was injured during the performance of the contract and has sued Steel and that Steel has asserted he was not injured through its negligence, but either through his own or Commercial's. This amounts to a prima facie showing that Steel is exposed to a potential judgment against it in the Rommell case, which Commercial may be obliged to assume.

To be sure, Steel could continue to retain Commercial's $20,900, and await a suit for it by Commercial whereupon it could set up as a defense and perhaps a counterclaim the basis for this attachment suit. It well may be that Commercial's right to choose its forum for such a suit will be frustrated. If so, it is patent that the better ends of justice will be served if the issues involved, which are so closely related, are tried in the same court rather than in different jurisdictions.

Accordingly, Commercial's motion to quash and dismiss the writ of attachment and levy made herein will be denied. An order should be submitted.

---

proceeds of the attached property, after payment of any costs and charges directed by order of the court to be paid therefrom, shall be applied, first, to the payment of the plaintiff's judgment and costs, and second, to the applying claimants in proportion to, but not in excess of, their judgments and costs."

"4:77-4. Order for Dismissal

"If there be no applying claimants, or if all claims have been satisfied, the plaintiff may obtain an order dismissing the action and setting aside the attachment."

"4:44-4. Evidence on Motions

"When a motion is based on facts not appearing of record, the court may hear the matter on affidavits presented by the respective parties, but the affidavits shall

be made on personal knowledge and shall set forth only facts which are admissible in evidence and to which the affiant is competent to testify. The court may direct the affiant to submit to cross-examination, or it may hear the matter wholly or partly on oral testimony or depositions."

6. Mueller v. Seaboard Commercial Corp., 1950, 5 N.J. 28, 73 A.2d 905; Seiden v. Fishtein, App.Div.1957, 44 N.J.Super. 370, 130 A.2d 645.

7. Original R. & R. Empire Pickle Works v. G. Arrigoni & C., etc., App.Div.1953, 28 N.J.Super. 405, 101 A.2d 17, and footnote 6, supra.

8. See Footnote 1, supra.