**PROZEL & STEIGMAN, INC., Plaintiff,**

v.

**INTERNATIONAL FRUIT DISTRIBU-TORS and Francisco Bendiner, SRL, Defendants.**

**Civ. A. No. 637–58.**

United States District Court
D. New Jersey.
March 17, 1959.

Stein, Stein & Engel, Jersey City, for plaintiff, by David M. Pindar, Jersey City.

Albert G. Besser, Newark, N. J., for defendant Francisco Bendiner, SRL.

WORTENDYKE, District Judge.

There is presented a motion by defendant Francisco ·Bendiner, SRL, (Bendiner), a limited liability company of Argentina, to quash a writ of attachment issued on application of plaintiff Prozel & Steigman, Inc., (Prozel), a Pennsylvania corporation, which had

been levied upon a certain shipment of fresh pears in the Harborside Warehouse, Jersey City, New Jersey. The writ issued out of the New Jersey Superior Court, Chancery Division, Hudson County on May 1, 1958 and was returned as executed by the Sheriff of Hudson County on May 9, 1958. Bendiner removed the case to this Court on June 4, 1958, on the ground of diversity.

The background of this case as set forth in the affidavit of Prozel submitted in support of the application for the writ, which allegations must be deemed as true and be construed in favor of Prozel on this motion, Mueller v. Seaboard Commercial Corp., 1950, 5 N.J. 28, 73 A.2d 905, is as follows:

On January 15, 1958 Prozel entered into a joint venture agreement with defendant International Fruit Distributors (International), an Argentina corporation, pursuant to which International was to purchase 30,000 standard size boxes of *choice grade* pears in Argentina for importation to New York. For its part of the agreement Prozel was to sell the pears in the United States for the joint account of the parties, and the profits or losses on the sale, after the expenses of the shipment and sale were deducted, would then be shared by both parties. Prozel agreed to advance International, by an irrevocable letter of credit, a stated amount per box to cover the estimated cost of the pears f. o. b. Buenos Aires, and also an amount to cover costs incidental to the shipments. The agreement also provided for shipment of *standard grade* pears when it became necessary for International, in the purchasing of the pears in Argentina, "to buy a complete certificate or manifest of sizes." These lower grade pears were to be sold for the joint account of Prozel and International on a 50%-50% basis. The agreement also recites that the shipment of the 30,000 boxes of *choice* pears was to be made on "the vessel or suitable substitute designated by Prozel sailing in February 1958, destination New York". Further the agreement stated that "partial shipments" were permitted and that,

if the shipment of 30,000 boxes cannot be made complete, and "since partial shipments are allowed, a new letter of credit will be established for the unshipped quantities if shipping space is obtained, * * * all other conditions and terms of the agreement [to] remain unchanged." The agreement of January 15 concludes by stating: "Any changes, corrections or amendments to this agreement shall be made only by mutual agreement and consent between Prozel and International."

On January 30, 1958 Prozel and International signed an amendment to the January 15 agreement, and specifically provided for possible shipments by International of additional fruit, such as all varieties of pears, apples, grapes, plums, etc., which additional shipments were to be considered a part of the original agreement.

Prozel then alleges that in February 1958, at the request of International, the defendant Bendiner became a participant in International's 50% interest in the joint venture. The parties apparently dealt on this tri-partite agreement during February until March 2, 1958, when, it is alleged, Bendiner assumed the entire interest of International in the joint venture. There is no evidence that International consented to this new arrangement.

Bendiner then advised Prozel that a shipment upon the joint venture was on the S. S. Jessie Stove, and accordingly a letter of credit was opened by Prozel and payment according to the terms of the January 15 agreement was made to Bendiner, for the shipment. This shipment of pears, aggregating 29,956 boxes, arrived on March 9, 1958 and was placed in cold storage at Jersey City.

Subsequently, during the first two weeks of April, 15,174 boxes, or approximately one-half of the total number of boxes received on the Jessie Stove, were withdrawn from storage and brought to fruit auction rooms in New York City. It was there discovered that only 8,630 of these boxes contained *choice grade* pears, which were far below the number antici-

pated by Prozel to be in the Jessie Stove shipment. All the 15,174 boxes, including the 8,630 boxes of *choice grade* pears were then sold for stated prices.

Prozel then contends, on the basis of this experience with this one-half portion of the Jessie Stove shipment, that the remaining unsold boxes in that shipment would comprise a like percentage of boxes of *choice grade* pears and thus fall short of the 30,000 boxes originally contracted for. There is no allegation in the affidavit for the writ that Prozel inspected the remaining boxes, and there is no evidence of how many boxes of the *choice* pears were in the remaining one-half of the Jessie Stove shipment. However, on the assumption that the boxes of pears still in storage comprised the same proportion of *choice* pears and *standard* pears as was in that half of the shipment brought to the auction rooms and sold, by extrapolation this proportion was applied to the remaining boxes in storage, and from this extrapolated figure Prozel computed the total number of boxes of *choice* pears received on the Jessie Stove. Based on the above computations, this number of boxes of course fell far short of the 30,000 boxes of *choice* pears called for under the contract. Prozel then alleged in its affidavit for the writ that it is entitled to recover from Bendiner certain sums as damages on the basis of the foregoing figuring.

There is no mention in any of the papers filed whether the shipment on the Jessie Stove comprised only a "partial shipment" as contemplated under the agreement. However, prior to receipt of the Jessie Stove pears, Prozel was advised that only 23,749 boxes of *choice* grade pears were on that ship. Prozel was thus on notice before arrival that the full 30,000 boxes were not in this shipment, and on this basis Prozel did undertake to start performance of its part of the contract, and indeed did sell a portion of the Jessie Stove shipment.

It appears that another shipment of at least 13,446 boxes of fresh pears was made subsequent to the Jessie Stove shipment, aboard the S.S. Dahlheim from Buenos Aires to New York. Since this shipment became the object of the writ of attachment issued herein, we must assume that such shipment belonged to Bendiner, although this is being contested in a companion suit. However, there is no allegation by either party as to whether this shipment on the Dahlheim did or did not constitute a further "partial shipment" contemplated under the original agreement.

■ When a remedy, such as was granted herein, for the seizure of property for the purpose of securing satisfaction of the judgment ultimately to be entered, has been removed from the State Court to this Court, the manner of obtaining such remedy is governed by the law of New Jersey, subject to the Rules of this Court. F.R.Civ.P. rule 64, 28 U.S.C.A.

The New Jersey statute governing attachments provides in part that such may issue: "Where plaintiff has a claim of an equitable nature as to which a money judgment is demanded against the defendant, and the defendant * * * is a nonresident and a summons cannot be served upon him in this state. * * *" N.J.S.A. 2A:26–2, subd. d. This writ was issued herein upon the basis of the allegations in the affidavit of Prozel concerning the facts set forth above, from which the Court was satisfied that Prozel had "causes of action of an equitable nature" against Bendiner and International.

New Jersey Rule 4:77–1 provides that upon "proof to the satisfaction of the court, establishing the plaintiff's right to the writ, the court shall make an order directing the issuance of the writ and fixing the amount of property to be attached. * * * Such proof shall be by affidavit * * * made pursuant to Rule 4:44–4." Rule 4:44–4 states "When a motion is based on facts not appearing of record, the court may hear the matter on affidavits presented by the respective parties, but the affidavits shall be made on personal knowledge and *shall set forth only facts which are admissible in evi-*

*dence* and to which the affiant is competent to testify." (Emphasis added.)

 It appears from the New Jersey cases that applications for the remedy of attachment are to be construed most favorably to the plaintiff seeking this remedy since the writ must issue quickly to be efficacious. Original R. & R. Empire Pickle Works v. G. Arrigoni & C., App.Div.1953, 28 N.J.Super. 405, 101 A.2d 17. Further, the application for the writ should essentially stand on its own merit aside from any technical difficulties that may exist. Seiden v. Fishtein, App. Div.1957, 44 N.J.Super. 370, 130 A.2d 645. The affidavits need only make out a prima facie case in favor of the plaintiff and plenary proof is not required. Mueller v. Seaboard Commercial Corp., supra.

 In this case the only facts which would be admissible in evidence concerning the shortage of boxes of *choice grade* pears was the allegation by Samuel D. Zellat, President of Prozel, that of the pears taken from storage in Jersey City to the auction room in New York City "only 8,630 boxes were determined to be of choice grade and the remaining 6,544 boxes were determined to be of standard grade." Even this is construing the allegation most strongly in favor of the plaintiff, since nowhere does it appear that the affiant had personal knowledge of this fact. However, it is clear that the conclusion then indulged in by means of the extrapolation procedure recited previously, i. e., that the unsold portion of the shipment in storage would contain the same proportion of choice grade boxes to standard grade boxes as was sold, without any apparent attempt at verification on the part of Prozel, is sheer speculation. This is the foundation on which this writ was issued, as Prozel based its claim for damages upon those projected figures. This it cannot do as the damages claimed in the action must be reasonably certain and not speculative. Cf. Republic of Italy v. De Angelis, D.C.S.D.N.Y.1952, 106 F.Supp. 605, 611, reversed on other grounds 2 Cir., 206 F.2d 121. The damages must be liquidated before a party can subject another to the hardship that this remedy entails. Grover v. Woodward, 1920, 91 N.J.Eq. 250, 109 A. 822, reversed on other grounds 92 N.J.Eq. 227, 112 A. 412; Gilson v. Appleby, 1910, 80 N.J.L. 542, 77 A. 1084, affirmed 82 N.J.L. 400, 81 A. 724; see Dicks-David Co. v. Edward Maurer Co., D.C.D.N.J.1922, 279 F. 281, 284.

It follows from a reading of the supporting affidavit that the writ was improperly issued and that it must be quashed. Cf. Korb v. Newspaper P. M., D.C.D.N.J.1941, 38 F.Supp. 339. This Court therefore has no further jurisdiction in this matter. Hisel v. Chrysler Corp., D.C.1950, 90 F.Supp. 655.

The further contentions of the defendant Bendiner need not be considered in light of the above and since no brief has been filed on behalf of the plaintiff, an order may be entered in accordance with this opinion.