LOUIS SCHLESINGER CO., Plaintiff,

v.

The KRESGE FOUNDATION and Kresge
Department Store, Inc., Defendants.

Civ. A. No. 932–64.

United States District Court
D. New Jersey.

Dec. 10, 1964.

Greenbaum & Greenbaum, by Robert Greenbaum, Newark, N. J., for plaintiff.

McCarter & English, by James R. E. Ozias, Newark, N. J., for defendant Kresge Foundation.

WORTENDYKE, District Judge.

This diversity action was removed to this Court after having been instituted in attachment in the Superior Court of New Jersey. One of the defendants, The Kresge Foundation, hereinafter Foundation, a Michigan corporation not registered or licensed to transact business in the State of New Jersey, has moved this Court for an order dismissing the action as to movant, or, in lieu thereof, quashing the writ of attachment issued against the property of Foundation. Levy was made under the writ upon a mercantile retail department store building and premises owned by Foundation in the City of Newark, and the lien of the levy was released by the filing of an appropriate bond before the transfer to this Court was effected.

Movant urges in support of its motion that this Court does not have jurisdiction over the defendant or its property because the New Jersey courts, upon whose jurisdiction the Federal Courts must rely after removal, Lambert Run Coal Co. v. Baltimore & Ohio R. R. Co., 258 U.S. 377, 42 S.Ct. 349, 66 L.Ed. 671 (1922), did not acquire jurisdiction either by virtue of the attachment proceedings or by personal service of process. The plaintiff has not shown that personal service was effected on the defendant, so the matter in issue is reduced to the propriety and efficacy of the attachment proceedings.

Basically the moving defendant's argument that these attachment proceedings are fatally defective is, generally, that the writ of attachment was not issued in conformity with the applicable New Jersey Statutes or Rules of Court and, more specifically, that the attachment action was not commenced by filing a complaint as N.J.R.R. 4:77–3 provides and that *prima facie* proof of the cause of action was not submitted in support of the State Court's Order of Attachment as required by N.J.R.R. 4:77–7(a).

The motion was duly briefed and fully argued by both parties thereto and affidavits in opposition to the motion have been filed with the Court. At the conclusion of the oral arguments decision was reserved and is now embodied in this opinion.

The record discloses that the writ of attachment was issued pursuant to an order of the Superior Court of New Jersey, made September 15, 1964, upon a complaint, verified by affidavit. Plaintiff represented that Foundation is a trustee corporation of the State of Michigan, not authorized to do business in New Jersey and has no agent or office in the State of New Jersey. Plaintiff, a New Jersey real estate brokerage corporation claims to be entitled to commissions based upon the rent reserved in a five-year lease (hereinafter described as the subsequent lease) of space from Founda-

tion in the department store building hereinabove mentioned. Plaintiff's claim is based upon the existence of the subsequent five-year lease, in conjunction with the brokerage agreement associated with an earlier lease agreement (hereinafter designated as the original lease). Plaintiff had negotiated this earlier lease for the moving defendant with the Western Electric Company, the same tenant now holding under the subsequent lease. The original lease had covered a substantial portion of the premises demised under the subsequent lease during the years immediately preceding the entry into the subsequent lease. The original lease remained in effect until the subsequent lease was entered into.

The complaint alleges that some time in June, 1964, Western Electric Company became a tenant of additional space on three other floors of the department store building under the terms of a lease agreement (the subsequent lease) unknown to the plaintiff at the time the complaint was filed. Plaintiff says that on May 11, 1964, when it learned of a proposed sale of the building and premises, it communicated with Foundation and with Kresge Department Store, Inc., asserted its right to commission in connection with the leasing of the additional space in the building to the Western Electric Company, and inquired respecting the terms of the lease agreement covering the additional space. Plaintiff received no response to its said notice and inquiry and charges that, pursuant to the provisions of the original commission agreement dated December 12, 1956, Foundation and Kresge Department Store, Inc. have become jointly and severally obligated to the plaintiff for additional commissions resulting from the execution of the subsequent lease.

The action was commenced in attachment in the New Jersey Superior Court. After the defendants had posted bond to relieve the real property attached under the writ, the defendant Foundation removed the cause to this court for diversity, and brought the present motion to dismiss the action and quash the writ of attachment.

Since *in personam* jurisdiction has not been claimed by the plaintiff, the existence of jurisdiction depends on the validity of the attachment. Foundation denies the validity of the attachment, and contends that the writ was not issued in conformity with applicable New Jersey statutes and rules of court.

The movant first contends that the writ should be quashed because the procedure followed in obtaining it failed to conform with N.J.R.R. 4:77–3 in that the complaint which, with the verifying affidavit, was treated by the Judge as the basis for the making of his order for the issuance of the writ, had not been "filed" as the term is defined in N.J.R.R. 4:5–6(a). That cited Rule provision requires generally that the filing of pleadings be effected with the Clerk of the Court but that a Judge thereof may permit the original and a copy of a pleading to be filed with him, in which event, he or someone at his direction, "shall note thereon the filing date with the initials of his name and office and he shall forthwith forward the same to the clerk for filing." It is conceded in this case that the complaint was left with the State Court Judge who imprinted his stamped name and date upon the complaint. This is an indication that the complaint was filed with him pursuant to the intention of counsel in presenting it to him. I consider that the complaint was duly filed. The record also discloses that on September 30, 1964, the Judge who had ordered that the writ issue entered an order *nunc pro tunc* that the complaint and supporting affidavit be filed. Such was done. There has been no showing that the moving defendant has been or will be in any way prejudiced by the failure of the plaintiff to file the complaint with the Clerk prior to applying for the Court's order for the writ, or by any delay in the actual receipt by the Clerk of the complaint and affidavit which were actually filed with him in due course. The order for the writ was not procedurally invalid.

■ Since the procedure to obtain a writ in the New Jersey Superior Court is governed by the New Jersey Court Rules, it must be liberally administered, and where strict adherence thereto will work injustice, they should be relaxed, N.J. R.R. 1:27A. Furthermore the statute establishing the procedure in attachment in New Jersey, N.J.S.A. 2A:26–1 et seq. provides in its opening section:

"This chapter shall be liberally construed, as a remedial law for the protection of resident and nonresident creditors and claimants."

Therefore, even if the complaint in the present case was not strictly "filed" as required by the provisions of the applicable Rule, the liberal construction directed by the statute and the rules protects the complaint against dismissal and the writ from being quashed. See Hillside National Bank v. McGruder, App.Div.1953, 28 N.J.Super. 340, 343, 100 A.2d 682. Finally, the corrective *nunc pro tunc* order made by the Judge who had made the order for the writ, while the cause was still within the jurisdiction of the New Jersey Court, eliminated any technical invalidity which might have been inferable from the lack of a strict "filing" of the complaint at the time the application for the writ was made. See Seiden v. Fishtein, App.Div.1957, 44 N.J. Super. 370, 130 A.2d 645.

■■ The primary argument of the moving defendant, however, is not directed to the issue of adequate filing, but to the question whether the complaint and supporting affidavits evince *prima facie* proof of the plaintiff's claim. The New Jersey rules require such a showing of *prima facie* proof in order for the writ of attachment to be valid, N.J.R.R. 4:77–7. The first issue presented in this regard is whether the supplementary affidavits, allowed under N.J.R.R. 4:77–16 in order to sustain the writ of attachment against a motion to vacate, are permissible once the case has been removed to the Federal District Court. Three cases and 28 U.S.C. § 1450 are dispositive of this question. The statute reads:

"§ 1450. ATTACHMENT OR SEQUESTRATION: SECURITIES

"Whenever any action is removed from a State court to a district court of the United States, any attachment or sequestration of the goods or estate of the defendant in such action in the State court shall hold the goods or estate to answer the final judgment or decree in the same manner as they would have been held to answer final judgment or decree had it been rendered by the State court.

"All bonds, undertakings, or security given by either party in such action prior to its removal shall remain valid and effectual notwithstanding such removal.

\* \* \* \* \* \* "

The meaning of this section is construed in Hisel v. Chrysler Corporation, D.C. Mo.1950, 90 F.Supp. 655 and Tanko v. Saperstein, D.C.Ill.1957, 149 F.Supp. 317. Both cases concerned suits initiated by attachment proceedings in the State court which, when removed to the District Court, were challenged on the ground that the attachment proceedings were defective. In each case the District Court looked to and relied upon the State law to determine the validity of the attachment. In the Hisel case the writ was found to be defective by State law, the Court saying, 90 F.Supp. at p. 658:

"Said statute [28 U.S.C. § 1450] preserves rights acquired under a writ of attachment as they existed in the state court at the time of removal, and, after removal, the Federal Court can only proceed thereon in the same manner that further proceedings might have been had in the state court."

In the Tanko case a requested amendment to the writ was allowed as one allowable under State law, the Court saying, 149 F.Supp. at p. 323:

"\* \* \* [I]f the attachment proceedings completed in the state court

do not fu*lly* comply with state law at the time of removal, the attachment may be perfected in the Federal court. * * * Any other rule would leave the plaintiff prejudiced by virtue of the removal. * *

"The principle that emerges from these decisions is that attachment proceedings may not be commenced anew in the Federal court after removal, but that an imperfect attachment can be validated in a Federal court. In determining what constitutes the prohibited issuance of new attachment process, on the one hand, and what amounts merely to permissive perfection of the attachment, on the other, state law should furnish the guides."

Accordingly, since the New Jersey Rules of Court specify that amendments and additional affidavits may be allowed to sustain the writ, the totality of the proof before the Court is available for the support of a *prima facie* case.

■ We may now revert to the contentions of the defendant Foundation. It argues that the writ of attachment issued by the State Court has not extended the jurisdiction of this Court to Foundation because the writ was not issued in conformity with applicable New Jersey statutes and rules of court. The New Jersey Attachment statute is the sole source of the remedy by attachment, and this Court's jurisdiction in an action removed from the State court, where it had been instituted in attachment, is dependent upon the jurisdiction acquired by the State court. N.J.S.A. 2A:26–2 subd. b provides in pertinent part that

"b. Where the defendant * * * is a nonresident of this state, and a summons cannot be served on him in this state; * * *."

an attachment may issue out of the Superior Court upon the application of any resident plaintiff against the property, real and personal, of any such nonresident defendant. The foregoing statutory provisions have been construed by New Jersey's highest court in Tanner Associates, Inc. v. Ciraldo, (1960), 33 N.J. 51, at p. 63, 161 A.2d 725, at p. 732, in which the Court said:

" * * * Under the former practice, and indeed under the subsections of the present statute which expressly require a claim against the defendant as a prerequisite to the issuance of a writ, N.J.S. 2A:26–2, subds. a, c and d, see Seiden v. Fishtein, 44 N.J.Super. 370, 374, 130 A.2d 645 (App.Div. 1957); Prozel & Steigman, Inc. v. International Fruit Distributors, 171 F.Supp. 196, 200 (D.C.D.N.J.1959), it was considered consistent to allow the defendant in attachment to test the merits of the plaintiff's cause of action in a limited manner and yet still remain aloof from the personal jurisdiction of the court. The substantive nature of the remedy of attachment is the same under the present statute as under the immediately preceding version. We conclude that a plaintiff, in seeking a writ of attachment under N.J.S. 2A:26–2 subd. b, is required to state in his affidavit sufficient facts to establish a *prima facie* cause of action against the defendant in attachment, and to include therein the other statutory requirements for the issuance of the writ."

The *quantum* of proof required for the issuance of a writ of attachment is prescribed in N.J.R.R. 4:77–7, which reads as follows:

"4:77–7 PROOF REQUIRED.

"(a) No writ of attachment shall issue except upon order of the court based upon prima facie proof of the cause of action alleged and of the grounds for issuance of the writ.

"(b) Such proof shall be by affidavit entitled in the cause. Facts alleged in the complaint may be verified by reference thereto without repetition in the affidavit. Affidavits shall comply with the provisions of Rule 4:44–4, except that facts not ascertainable on personal knowledge

may be asserted on information and belief based upon diligent inquiry recited in detail."

The Rule (4:44-4) requires that affidavits presented as evidence on motions "shall be made on personal knowledge and shall set forth only facts which are admissible in evidence and to which the affiant is competent to testify."

■ The moving defendant here attacks the affidavit submitted in behalf of the plaintiff on the application for the order for the writ upon the ground that critical statements therein were made neither upon the affiant's personal knowledge nor upon information and belief based upon diligent inquiry. However, in view of the Court's continuance of the argument on the pending motion to permit the plaintiff to supplement its factual representations, we must consider the totality of the statements appearing in the verified complaint and in all affidavits presented in connection with the motion. N.J.R.R. 4:77-16(b).

A detailed examination of the complaint and proofs is therefore necessary. First the complaint sets forth the contractual obligations of the defendant Foundation, which it is alleged arose when the original lease was executed by Foundation and Western Electric, i. e., that on or about December 12, 1956, Foundation contracted in writing to pay to the plaintiff commissions for services to be rendered in procuring Western Electric as a tenant for space in the building "said commissions to be in accordance with the rates and rules published by the Detroit (Michigan) Real Estate Board which were in effect at the time." The pertinent rules are then set forth in the complaint in the following excerpt, as follows:

"2. FOR NEGOTIATING LEASES:

"The commission for negotiating leases shall be as follows:
"5% of the aggregate rental for one year or less, but in no instance less than one-half of the first month's rent . . . $25.00.

"On leases for more than one year 5% of the aggregate rental for the first year and 2½% of the aggregate rental for the next four years, and 2% of the aggregate rental for the next five years, and 1% of the aggregate rental for the balance of the term up to and including the 50th year.

"(See Rules 'e' to 'j' inclusive * * *)

"LEASE WITH PRIVILEGE OF RENEWAL.

" * * * (e) Where lessee avails himself of privilege of renewal or extension of lease, or takes on additional space under provisions of original lease, the negotiating broker shall be entitled to additional compensation at same rates as applied to original case, when and as said lessee avails himself of such privileges."

As regards the leases in question, the original lease described the demised premises as the 8th and 9th floors of the building; whereas the demised premises under the subsequent lease were the 5th, 6th, 7th, 8th and 9th floors of the building. The term of the original lease was ten years from on or about April 1, 1957; that of the subsequent lease was five years from delivery of all five floors for occupancy. Paragraph 3 of the original lease accords to the lessee the option to renew the lease for an additional period of five years upon the same terms and conditions, provided written notice of its election to renew is given to the lessor at least nine months prior to the expiration of the lease. The same paragraph provides:

"The Lessor shall offer first to the Lessee, which shall have the right of first refusal, to rent any other space in the building, and available for leasing, of which the demised space is a part, which may become vacant during the term of this lease, at a rental to be agreed upon by the parties. The Lessor's offer shall be in writing and must be accepted by

the Lessee by notice in writing to the Lessor within thirty (30) days after receipt of said offer."

The subsequent lease expressly provides that the original lease "is hereby terminated and is no longer of any force and effect except that any advance payments of rent made under the said lease of February 15, 1957 shall be credited to the first rental payments due or becoming due under this lease."

The most recent affidavit by one of the plaintiff's officers, Marvin Katz, states:

> "As to the 8th and 9th floors of the demised premises * * *, there is a clear inference that such letting is an exercise of the renewal privilege contained in paragraph 3 of the original lease to the extent that the term of occupancy of the said 8th and 9th floors * * * continues past April 1, 1967",

and that under the subsequent lease the same tenant has taken additional space from Foundation, in excess of that demised in the original lease, viz., the 5th, 6th and 7th floors. The premises demised in the subsequent lease aggregate 262,500 square feet, for which the lessee is required to pay for the term thereof, (which includes the cost of performance by the lessor of certain work in the demised premises), the sum of $1,975,000.

Relying upon the Rates and Rules of the Detroit (Michigan) Real Estate Board previously quoted, and reciting the further provisions thereof to the effect that commissions shall be deemed to have been earned when the price and terms are arranged between the lessor and lessee, Katz argues that "the minds of both parties * * * [have] fully met, and * * * a legally binding preliminary agreement between the parties * * * [has] been executed." The plaintiff contends that as of the date of the filing of its complaint herein, there was due and owing to the plaintiff from Foundation a further commission by reason of the provisions of the subsequent lease, and that the plaintiff had presented to the Judge of the Superior Court of New Jersey who signed the order for the issuance of the writ of attachment a *prima facie* cause of action for the recovery thereof.

In its preargument brief in support of the motion against these contentions, Foundation asserts that "Plaintiff's complaint and affidavit do not even allege or claim that the five year lease for the acquisition of the three additional floors was an availing by Western Electric of privileges under provisions of the original ten year lease. Under such circumstances, the State Court should not have assumed or inferred that the five year lease was such an availing." In Mr. Katz' supplemental affidavit of November 13, 1964, to which were annexed the copies of the original and subsequent leases, he reasons (rather than states) that the amount required to be paid by the tenant under the subsequent lease constitutes in fact a portion of the rent due to the landlord under the provisions of the original lease.

Despite the supplementation of the complaint by the Katz' affidavits and the exhibits thereto annexed, it is the position of the moving defendant that three essential elements of a *prima facie* cause of action supportive of a writ are lacking, i. e., (1) the original lease did not grant to the tenant "the privilege of taking on additional space"; (2) the acquisition by the tenant of three additional floors under the subsequent lease did not constitute "an availing by Western Electric Company of privileges under provisions of the original ten year lease"; and, (3) there is no proof that the lessee exercised its option to renew on the same terms and conditions by written notice to the lessor as required by paragraph 3 of the original lease. Accordingly movant argues that this Court does not have before it all the essentials of a cause of action or the gist of an action, and therefore, that no *prima facie* case in favor of the plaintiff was made out.

However, it is perfectly clear that the original lease accorded to the lessee,

Western Electric, the option of renewal for an additional period of five years upon the same terms and conditions, and obligated the lessor to "offer first to the Lessee, which shall have the right of first refusal, to rent any other space in the building, and available for leasing, of which the demised space is a part, which may become vacant during the term of this lease, at a rental to be agreed upon by the parties." All of the criteria suggested by movant for the showing of a prima facie case on the application for the writ, are here present. The original lease, admittedly negotiated through the efforts of the plaintiff, granted the tenant the privilege of taking additional space in the same building. It is also irrefutable that the tenant took additional space in the building under the subsequent lease. It is a permissible, if not a conclusive, inference that in taking this additional space the tenant availed itself of the privilege accorded to it by the provisions of the original lease. Plaintiff predicates its right to recover commissions upon the rentals to be paid under the subsequent lease upon the terms of the brokerage agreement pursuant to which the original lease was negotiated. That brokerage agreement incorporated by reference the Rules of the Detroit Real Estate Board. Those Rules provided, *inter alia*, that where the lessee avails himself of the privilege of renewal or extension of the lease or takes on additional space under provisions of the original lease, the negotiating broker shall be entitled to additional compensation, etc.

■■ We are now called upon to determine whether the taking on of additional space by Western Electric, by availing itself of a privilege accorded to it in the original lease, was "under provisions of original lease" as that phrase is to be construed in the Detroit Real Estate Board Rules. In attempting to solve the problem posed by the foregoing query, we must consider the effect of paragraph 1 of the subsequent lease which states that the subsequent lease supercedes the original lease and terminates the original lease and renders the original lease no longer of any force and effect. The existence of a *prima facie* cause of action in favor of the plaintiff upon the basis urged by it is not inconsistent with the meaning and intent of the language of paragraph 1 of the subsequent lease. Since we are persuaded to the inference that the entry into the subsequent lease was an exercise by the tenant of a privilege accorded to it by the provisions of the original lease, the inclusion of the additional space in the subsequent lease with the same space which had been demised by the original lease, would obviously and reasonably necessitate or render appropriate the supercession of the original lease. In so providing, the parties could not deprive the broker who negotiated the original lease from availing himself of the provisions of his brokerage agreement with the lessor and from treating the subsequent lease as in substance an enlargement of the area demised in the original lease. Zinn & Co. v. Shawnee Pottery Co., D.C.Ohio, 1955, 148 F.Supp. 322, affd. 6 Cir. 1956, 240 F.2d 958. Also, although it is quite possible that a strict renewal of the original lease has not occurred, the Court must be prepared to look through the form of the transaction to its substance, Zinn & Co. v. Shawnee Pottery Co., supra, and the existence and terms of the subsequent lease easily establish an inference that the subsequent lease is in fact a renewal of the original lease. I conclude, therefore, in the light of the totality of the evidence before me, that the order of the Superior Court of New Jersey which authorized the issuance of the writ of attachment must be considered as valid.

The motion to quash the writ in this case was based upon the complaint and its verifying affidavit. For the purposes of that motion "[T]he averments contained in such papers are to be deemed true, and all legitimate deductions and inferences from what appears in such papers must be made and construed in favor of plaintiff, and if such papers

show a prima facie case for the attachment this is sufficient." Mueller v. Seaboard Commercial Corp., 1950, 5 N.J. 28, 32, 73 A.2d 905, 907. The case pends in this Court solely by virtue of diversity of citizenship between the parties. In such a case this Court sits as another court of the State of New Jersey. The remedy by attachment derives from the New Jersey statute, N.J.S.A. 2A:26-1 et seq. The very first section of that statute directs that it is to be "liberally construed, as a remedial law for the protection of resident and nonresident creditors and claimants." Not only the statute itself, but the procedure prescribed for securing the writ, which is regulated by Rule N.J.R.R. 4:77, must be applied with liberality "in order to accomplish justice on the merits of the action * *." Hillside National Bank v. McGruder, supra, App.Div.1953, 28 N.J.Super. 340, 343, 100 A.2d 682, 683. Applications for the remedy of attachment are to be construed most favorably to the plaintiff seeking the remedy. When the present motion was made the lien of the writ upon the movant's real estate had been lifted by the filing of a bond. No hardship upon the movant has resulted from the Court's allowance of the filing of supplemental evidence in the form of affidavit supportive of the *prima facie* case which the plaintiff alleged in its complaint. This Court has heard the pending motion on affidavits presented by the respective parties as the New Jersey Court would have been permitted to do under the provisions of N.J.R.R. 4:77-16(b). The validity of the order for the writ finds support in the aggregate evidence adduced by the affidavits upon the present motion.

I have found that the attachment action was properly and effectively instituted in the New Jersey Court, and that the order for the writ, as well as the writ itself, was legally made and effective. The execution of the writ bound the real estate levied upon, and the lien of the levy was removed from the real estate by the filing of the bond by the owner pursuant to N.J.R.R. 4:77-18. The filing of that bond did not constitute a general appearance by the property owner in the action, N.J.R.R. 4:77-18(c). The question of whether this Court or the New Jersey Superior Court secured personal jurisdiction over the moving property owner becomes irrelevant because, although no valid judgment *in personam* could be rendered against movant without personal service or waiver of summons and voluntary appearance, after the removal of the case to this Court from the State Court, this Court has full control of the action and jurisdiction of the subject matter thereof to the extent that the State Court had such control and jurisdiction before removal. The property which I find to have been properly attached in the State Court proceedings would, but for the bond, still be held to answer any judgment rendered against the moving defendant, but such judgment could be enforced only against the bond as the substitute for the attached property. Clark v. Wells, 1906, 203 U.S. 164, 27 S.Ct. 43, 51 L.Ed. 138. The filing of the bond pursuant to N.J.R.R. 4:77-18, however, removes the lien of the attachment from the real estate and obligates the principal and surety on the bond to the plaintiff to the extent of the amount of the bond, to respond to any judgment which may be recovered against the property in this cause.

The motions to dismiss the complaint and to quash the writ of attachment are denied. The plaintiff is directed to submit an order according with the determinations herein made.