CHESTER MUELLER, PLAINTIFF-RESPONDENT, v. SEA-
BOARD COMMERCIAL CORPORATION, A CORPORA-
TION OF DELAWARE, DEFENDANT-APPELLANT.

Argued March 6 and May 15, 1950—Decided June 12, 1950.

Mr. *Edward R. McGlynn* argued the cause for the appellant. *Messrs. McGlynn, Weintraub & Stein,* attorneys.

Mr. *Robert W. Brady* argued the cause for the respondent. *Messrs. Brady & Daly,* attorneys.

The opinion of the court was delivered by

BURLING, J. This is an appeal to the Appellate Division of the Superior Court from an order of the Essex County Court, Law Division, denying the defendant's motion (1) to vacate an order made on November 7, 1949, authorizing the issuance of a writ of attachment for $25,000, and (2) to quash the writ issued pursuant thereto. We have certified the appeal on our own motion.

It is observed, *in limine,* that the order complained of is not a final judgment and since there has been nothing brought to our attention indicating that it is such an interlocutory judgment from which an appeal will lie, see *Rules* 4:2–1 and 4:2–2, the appeal is inappropriate. Under our former practice the only manner in which a review of a refusal to quash a writ of attachment could be had was by a writ of *certiorari. Jaudel v. Schoelzke,* 95 *N. J. L.* 171 (*E. & A.* 1920). Prerogative writs have been superseded, 1947 *Constitution, Art. VI,* § *V, par.* 4, *Rule* 3:81–1, but the relief heretofore available thereby is now available by an action in the Law Division of the Superior Court. *Rule* 3:81–2. The proper remedy of the defendant in the instant case, accordingly, is prescribed by the latter rule. However, since the case has been certified by us of our own motion, *Rule* 1:5–1(a), we shall dispose of it on the merits.

The plaintiff filed five affidavits in support of the order for a writ of attachment. No affidavits were filed by the defendant. The defendant in its motion to set the order aside and again on this appeal asserts that the affidavits are insufficient under the provisions of *R. S.* 2:42–88 in that they fail to establish that the plaintiff has a cause of action.

The statute provides in part as follows:

"A writ of attachment may issue out of the Superior or County Courts upon the application of any resident or nonresident plaintiff against the property, real and personal, of any person, corporation or organization against whom or which a summons might issue, upon proof, by affidavit entitled in the cause then proposed or then pending to the satisfaction of the court in which an action is about to be commenced, or to a judge thereof establishing: * * *

"b. That plaintiff has a cause of action, the nature and particulars of which he shall specify, and that defendant absconds from his creditors, or is a nonresident of this State, and that summons cannot be served on him; but an attachment shall not issue hereunder against the rolling stock of a common carrier of another State or against the goods of a nonresident in transit in the custody of a common carrier of this or another State, or * * *"

■ Where a motion to dissolve or quash an attachment is based upon the original papers on which the attachment was granted, the averments contained in such papers are to be deemed true, and all legitimate deductions and inferences from what appears in such papers must be made and construed in favor of plaintiff, and if such papers show a *prima facie* case for the attachment this is sufficient. From the plaintiff's collective affidavits it appears: The defendant is a Delaware corporation with its principal place of business at 1819 Broadway in New York City. It is not authorized to and does not do business in New Jersey and has no officers or agents resident in this State upon whom a summons may be served. It was engaged in the business of corporate financing until September, 1948, when it was publicly announced that as a result of its own financial troubles it would find it necessary to liquidate the accounts of its customers. An expert liquidator, Frederick W. Raeder, was thereupon placed in complete charge of the defendant's business activities. One of the defendant's accounts receivable at this time was a debt of Technical Devices Corporation, a New Jersey corporation engaged in manufacturing with its principal place of business in Roseland, New Jersey. The defendant is the owner of all the outstanding stock of Technical. In 1949 the defendant decided to liquidate Technical and appointed Leslie E. Roberts, the president of Technical, as its agent for that purpose.

All moneys received by Technical were to be paid over to the defendant. Roberts reported to Raeder and followed his instructions on all corporate matters.

The plaintiff is the owner of certain goods and chattels worth $25,000. These chattels were lawfully in the possession of Technical and being used by it under an option to purchase. In April, 1949, Roberts informed the plaintiff that Technical did not intend to exercise its option and that it had no further use for these chattels. The plaintiff thereupon sought to recover possession of these chattels, but without success. In a visit to Technical's place of business in the latter part of April, the plaintiff was informed by Eli Saltz, the person in charge of Technical's plant in Roberts' absence, that Roberts, acting on orders of Raeder, had instructed him not to turn this property over to anyone. Having been refused possession of his property, the plaintiff thereupon filed a complaint against Technical and Roberts for damages resulting from the conversion of these chattels. In his answer to this complaint, Roberts denied that he actively controls and manages the business of Technical. Both Technical and Roberts acted under the directions of Raeder in refusing to deliver up the chattels in question to him and in so doing they were acting as agents for the defendant and the defendant has actively participated in the conversion.

The foregoing facts which were set forth in the plaintiff's affidavits clearly establish *prima facie* the proposition that Technical and Roberts in refusing to deliver up the property were acting as agents for and under instructions from the defendant. There is sufficient in these facts from which it can reasonably be inferred that Technical and Roberts were agents of the defendant and acting under its direction and authority in the converting of the plaintiff's property. If this be so there can be no doubt that the defendant is liable as a principal for the torts of its agents, Technical and Roberts, committed within the scope of their agency. As was stated by the Court of Errors and Appeals in *Reliable Woodworking Co. v. Lindeman,* 105 *N. J. L.* 121, 122 (*E. & A.*

1928), "The rule of law is that every person is liable in trover who personally or by agent commits an act of conversion, or who participates by instigating, aiding or assisting another." See also the *Restatement, Agency* (1933), §§ 212 and 244, and the *Restatement, Torts* (1939), § 876. A corporation is liable for torts committed by its agents within the course of employment and the fact that the agent is also a corporation is immaterial. *Fletcher, Cyclopedia Corporations (Perm. Ed.), Vol.* 10, *par.* 4877, *p.* 338; 19 *C. J. S., Corporations, par.* 1260. Therefore, responsibility for the action of Technical, through its agents, also fastens upon the defendant.

The defendant's argument proceeds on the hypothesis that conversion requires a refusal to deliver on demand; that there is no proof that the defendant exercised any dominion over the property in question; that the alleged instructions by Raeder to Roberts and Technical to refuse delivery of the property to the plaintiff do not constitute a conversion because mere words, without accompanying acts, will not amount to a conversion; and that mere stock ownership by one corporation in another does not make the former liable for the latter's torts. But if the statements in the affidavits filed by the plaintiff are true the defendant is more than a mere stockholder in Technical; it is using its complete ownership of Technical for the purpose of directly controlling the latter's every activity; and Raeder acting for the defendant did exercise dominion over the plaintiff's property by refusing to permit delivery thereof when delivery could have been permitted by him.

██ We are well aware of the numerous cases which have decided that mere stock ownership by one corporation in another corporation is insufficient to render the former liable for the torts of the latter, *Ross v. Pennsylvania R. R. Co.,* 106 *N. J. L.* 536 (*E. & A.* 1930); *Fletcher, Cyclopedia Corporations (Perm. Ed.); Vol.* 10, *par.* 4878, but where the affairs of the latter corporation are so organized and conducted as to make it a mere instrumentality of the former the corporate entity will be disregarded where, as was recently said by this

court in *Irving Investment Corp. v. Gordon,* 3 *N. J.* 217
(1949), at 223, "\* \* \*. the corporate form is used as a
shield behind which injustice is sought to be done by those
who have the control of it \* \* \*." See also *Fletcher, supra,
Vol.* 1, *par.* 43. The reasonable inference to be drawn from
the affidavits is that the defendant through Raeder completely
dominated the action of Roberts and Technical and that Rae-
der's instructions to refuse delivery of the property to the
plaintiff were accompanied by actual refusals of delivery.

The allegations of fact contained in the plaintiff's affidavits
are considered sufficient to establish *prima facie* a cause of
action.

The briefs and oral arguments presented by the parties on
March 6, 1950, were limited to the question of whether the
affidavits set forth a cause of action against the defendant
based upon a conversion. After the oral argument the court
of its own initiative, in view of *Rules* 3:72–1 and 3:43–3,
pondered the evidential competency of some of the statements
contained in the plaintiff's affidavits. *Rule* 3:72–1 sets forth
the procedure for the prosecution of an attachment action
and reads in part:

"Every action of attachment shall be proceeded upon in accordance
with this rule. Upon proof to the satisfaction of the court, establish-
ing the plaintiff's, right to the writ, the court shall make an order
directing the issuance of the writ and fixing the amount of property
to be attached, and also, if the court in its discretion so directs,
requiring the plaintiff to post a bond prior to the issuance of the
writ. Such proof shall be by affidavit entitled in the cause then
proposed or then pending and made pursuant to *Rule* 3:43–3."

*Rule* 3:43–3 referred to above, provides:

"When a motion is based on facts not appearing of record, the
court may hear the matter on affidavits presented by the respective
parties, but the affidavits shall be made on personal knowledge and
shall set forth only facts which are admissible in evidence and to
which the affiant is competent to testify. The court may direct the
affiant to submit to cross-examination, or it may hear the matter
wholly or partly on oral testimony or depositions."

The court, *sua sponte,* then directed the parties to argue the following questions:

1. Do the plaintiff's five affidavits fail to state a cause of action under *R. S.* 2:42–88, *Jaudel v. Schoelzke,* 95 *N. J. L.* 171, 177, *Rule* 3:72–1 and *Rule* 3:43–3, requiring affidavits based on personal knowledge, setting forth only facts admissible in evidence and to which the affiant is competent to testify?

2. Have any defects as to the quality of the affidavits been waived by making motions to set aside the order for attachment and to quash the writ without specifically objecting to the character of the affidavits?

 These questions were argued on May 15, 1950. It is noted that the present statutory authority governing attachment proceedings is contained in *R. S.* 2:42–86 *et seq.* (*L.* 1948, c. 358) which repealed *R. S.* 2:42–1 *et seq.* (*L.* 1901, c. 74) the former Attachment Act, providing for attachment on liquidated demands on contract or penal statute, and *R. S.* 2:42–72 *et seq.* (*L.* 1903, c. 247, as amended by *L.* 1907, c. 114) providing for attachments on liquidated or unliquidated demands on contract or tort. *R. S.* 2:42–88 (*L.* 1948, c. 358) provides, *inter alia,* that a writ of attachment may issue upon proof by affidavit to the satisfaction of the court in which an action is about to be commenced that (a) the defendant is a nonresident of this State, (b) a summons cannot be served upon him and (c) the plaintiff has a cause of action, the nature and particulars of which he shall specify. *Rule* 3:72–1 outlines the procedure for the prosecution of the action under *R. S.* 2:42–88 and *Rule* 3:43–3 requires that "the affidavits shall be made on personal knowledge and shall set forth only facts which are admissible in evidence and to which the affiant is competent to testify." This requirement is in conformity with the doctrine of *Jaudel v. Schoelzke, supra,* to the effect that proof, when used in a legislative enactment, means competent and legal evidence. It is recognized in this State that rules of evidence are equally applicable to affidavits as to oral testimony. *O'Neill v. Linowitz,* 92 *N. J. Eq.* 179 (*Ch.* 1921) : *Bull v. International Power Co.,* 87 *N. J. Eq.* 1 (*Ch.* 1916).

The first question argued on May 15, 1950, dealt with the evidential competency of the plaintiff's affidavits, "to state a

cause of action." The defendant's contention was that the statements endeavoring to prove (a) the agency of Roberts and Technical for the defendant, and (b) the order of Raeder refusing delivery and thus constituting a conversion were hearsay. It was further contended that the allegation of agency was predicated upon alleged statements made by Roberts and that agency cannot be established by extra-judicial declarations of the alleged agent.

It is undoubtedly true that agency cannot be proved merely by the extra-judicial declarations of the person whose agency is sought to be proved. *Van Genderen v. Paterson Wimsett Thrift Co.*, 128 *N. J. L.* 41 (*E. & A.* 1941). But are the proofs of the existence of a cause of action and the alleged agency predicated upon hearsay and merely upon the declarations of the alleged agent? An analysis of the affidavits discloses that the plaintiff Mueller had personal knowledge of (1) Raeder's complete authority to act for the defendant; (2) Roberts' presidency of Technical; (3) Roberts' and Technical's possession of the plaintiff's property; (4) Roberts' refusal to surrender the property; (5) the 100% stock ownership by the defendant of Technical; and (6) the indebtedness of Technical to the defendant in the amount of $269,407.18. Mueller's affidavit contains the unequivocal statement that "Roberts is the agent in fact for Seaboard Commercial Corporation in liquidating the assets of Technical Devices Corporation." This statement alone is a conclusion but his affidavit details his efforts to contact Raeder through Roberts and Seaboard's New York attorneys for the stated purpose of getting his property subsequent to the time his original demand on Roberts was refused. These efforts did not result in any response by Raeder or Seaboard's New York counsel denying Raeder's control of Roberts but they did result in Roberts' again thereafter refusing to surrender the property.

An affidavit of Robert J. McCurrie stated that he was the officer designated by a judge of the Essex County Court to take the deposition of any person upon oral examination in

an action pending between John D. Cassidy as plaintiff and Roberts, Technical and Seaboard as defendants. This affidavit contained excerpts from the transcript of Roberts' deposition, taken under oath, to the effect that the present operations of Technical are liquidation; that the liquidation was determined by Seaboard through Ràeder; that Technical is required to turn over all moneys received by it to Seaboard; and that Technical was expected to be completely out of business by December, 1949. The transcript contained a stipulation that the deposition should have the same force and effect as if it had been taken under an order in an action pending between Chester Mueller, the present plaintiff, against Technical and Roberts in the Essex County Court. The plaintiff's affidavit in the attachment proceeding states that his pending action against Roberts and Technical is founded in trover and conversion and that Cassidy's pending action against Technical, Roberts and Seaboard is grounded in breach of promise, conspiracy, trover and conversion. The present attachment action against Seaboard is predicated upon the participation by Seaboard in the same act of conversion which is the subject of the aforesaid pending litigation between the plaintiff, Roberts and Technical. Thus one of the issues involved on the occasion of the taking of Roberts' deposition appears *prima facie* to be substantially the same issue involved in the present attachment proceedings. Both of the parties to the present action were in attendance at the taking of the deposition and were directly interested therein. The hearsay rule with respect to testimonial statements was accordingly satisfied by the opportunity of Seaboard, the defendant in the present action, to cross-examine Roberts at the time the deposition was taken. See *Wigmore on Evidence, (3d Ed.), Vol. 5, pars.* 1386 *et seq.* Historically the rule excluding hearsay had its genesis with the inception of the jury system and was intended to keep from the jury, matter, the nature and effect of which they were considered not qualified to properly estimate. *McKelvey on Evidence (5th Ed.* 1944), *p.* 382. One of the theories of the rule is that testimony should not

be received unless there has been an opportunity to cross-examine the person whose statement is offered in evidence. See *Wigmore on Evidence* (*3d Ed.*), *par.* 1362. All of the foregoing facts clearly spell out a *prima facie* agency relationship through competent evidence which is not limited merely to the declarations of the alleged agent but is supported *aliunde*.

The statements contained in Mueller's affidavit reflecting the declarations of Roberts with respect to his instructions from Raeder to refrain from delivering the property in question to Mueller are clearly exempt from the general rule respecting hearsay testimony since they were made by the agent in the transaction of the principal's business. It has been the law for many years in this State that statements made *dum fervet opus* by an agent are admissible as evidence against the principal. *Reed v. VanCleve,* 27 *N. J. L.* 352 (*Sup. Ct.* 1859). See also *Van Genderen v. Paterson Wimsett Thrift Co., supra,* and *Lovell v. Underwriting Management Corp.,* 107 *N. J. L.* 357 (*E. & A.* 1930). See also the *Restatement, Agency, par.* 289 (c).

*R. S.* 2 :42–87 (*L.* 1948, *c.* 358) provides that the Attachment Act is to be liberally construed for the benefit of attaching creditors. A *prima facie* case is all that is required to be made out by the affidavits; plenary proof is neither required nor practical since a writ of attachment must issue quickly if it is to serve its purpose. It is our conclusion that, considering the peculiar relationship between the parties, the affidavits contained sufficient competent evidence to state a cause of action within *Rules* 3 :72–1 and 3 :43–3, and *R. S.* 2 :42–88.

It is observed in passing that no effort was made by the defendant to cross-examine Mueller as permitted by *Rule* 3 :43–3. It is also observed that if any amendment to Mueller's affidavit had been considered necessary by the trial judge it could have been made under *R. S.* 2 :42–129 (*L.* 1948, *c.* 358) which provides that:

"Errors in form or substance which do no substantial damage shall not vitiate the attachment proceedings, and the court may, at

any stage of the proceedings, permit amendments of the pleadings, affidavits and process, or the submission of additional affidavits."

This liberal provision was not contained in the predecessor statutes governing attachment proceedings.

This disposition renders any consideration of the question of waiver by the defendant of any defects as to the quality of the affidavits unnecessary.

The order appealed from is affirmed.

Wachenfeld, J., concurring in result.

*For affirmance*—Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING and ACKERSON—6.

*For reversal*—None.