ANDREW, J.T.C.
The focus of this dispute between plaintiffs, John and Mario Coppa, and defendant, Director, Division of Taxation (Director), is on the question of whether the purchase and use of a powerboat, “Brothers Two,” in the name of a Delaware corporation, Brothers Two, Inc., is subject to a use tax under New Jersey’s Sales and Use Tax Act, N.J.S.A. 54:32B-6. In order to resolve this main question, however, the underlying issue which initially confronts this court and must be decided is whether, as plaintiffs assert, the court should give legal recognition to Brothers Two, Inc., the vessel’s purchaser of record, as a valid, separate corporate entity. If, as the Director contends, however, the close corporation is merely a sham, then plaintiffs, as sole shareholders of Brothers Two, Inc., would be personally liable for a use tax on the vessel and could not claim the statutory exemption for a nonresident corporation under N.J. S.A. 54:32B-11(2).
The testimony of plaintiff, John Coppa, and the evidence presented at trial revealed the following facts. On January 30, 1979, New Jersey residents, John and Mario Coppa, negotiated with Staten Island Boat Sales, Inc. of New York for the purchase of a 31-foot powerboat at a sale price of $39,950. The buyer was listed as “Brothers Two, Inc. — Mario Coppa, Pres.” No sales tax was paid to New York since the purchaser was designated as an out-of-state corporation with a nonresident business address in Wilmington, Delaware. Approximately six weeks later, on March 21, 1979, a certificate of incorporation was issued and filed in Delaware in the name of Brothers Two, Inc. Later, Chemical Bank of New York provided financing pursuant to a retail installment contract, dated April 4, 1979 and signed by Mario Coppa. While the contract was in the name of “Mario Coppa Pres. — Brothers Two,” underneath that designation plaintiff’s individual New Jersey home address was listed. In completing the contract agreement, the boat dealer wrote that the use of the boat was “pleasure,” the home port was “Wilmington, Delaware,” and the boat would be kept at “Sportsman’s Island Marina, Bricktown, New Jersey.” A New *240 Jersey insurance agent also provided liability coverage. Final delivery of the vessel was in June 1979, when plaintiffs sailed the vessel “Brothers Two” from Staten Island to its dock at the Bricktown, New Jersey marina where it has remained until the present time.
Commencing in 1979, Brothers Two, Inc. filed annual franchise tax returns with Delaware. It was designated as a nonstock corporation with no gross assets and paid an annual corporate tax of $10. A New York company procured a registered agent of the corporation in Delaware which processed the incorporation papers and provided a corporate mailing address. The agent also supplied standardized preprinted forms which were to serve as minutes of the incorporators' first meeting and as by-laws for the new corporation. Other than page 16M of the by-laws that denoted the officers of the corporation as John Coppa, President and Secretary, and Mario Coppa as Vice-President and Treasurer, no other information was ever inserted in the by-laws or the minutes section of the forms.
John Coppa testified that he and his brother created Brothers Two, Inc. to conduct a charter boat business on the intercoastal waterway between Delaware and Florida. He also noted that he had extensive experience in the navigation and operation of all types of vessels and, since March 1985, he had held a captain's license from the Coast Guard. In addition, he stated that he and his brother were foreclosed from following through with their charter business plans because of other financial and business commitments which they were forced to undertake in June 1979.[1] Consequently, any plans they may have had to develop a charter-boat service fell by the wayside in light of *241 these new business developments. The end result was that the corporation never actively engaged in its alleged original business purpose.
Plaintiff admitted that although he and his brother had not observed any corporate formalities in the creation or operation of Brothers Two, Inc., they had held informal annual meetings to discuss the status and future of their charter business. He added that the corporation kept no written minutes of any meetings, had never adopted by-laws, issued no shares, paid no federal or New Jersey taxes, kept no account books or records, and had no separate checking account or telephone number. From the day the brothers took delivery of the boat in June 1979, John Coppa acknowledged that the vessel had been used solely for the personal use of the owners of the corporation. Moreover, all expenses of maintaining and operating the boat, including fuel, insurance, mortgage payments, and mooring fees, were disbursed from the personal bank accounts of one of the brothers. Furthermore, plaintiff stated that the corporation never derived any income from a charter,[2] acquired no other assets except the boat and received no rental fees from plaintiffs, John and Mario Coppa, to reimburse it for use of the vessel. Plaintiff also confirmed that the powerboat had never been docked or moored in Delaware waters.
John Coppa stated that in 1983, the New Jersey Department of Environmental Protection required that all boats operated in the State for more than six months of the year had to be registered in New Jersey. The Department of Motor Vehicles refused to allow plaintiffs to register the vessel in the corporate name and allegedly advised plaintiffs that registering the vessel in their names individually would not subject them to sales tax liability. In crosschecking its files, however, the Division of Taxation discovered that no sales tax had been paid by plaintiffs upon purchase of the powerboat in 1979 and thus issued a *242 determination on October 13, 1983 assessing plaintiffs for a deficiency tax payment. After a conference with plaintiffs on December 7, 1983, the Director rendered a final determination on December 21, 1983 affirming his prior assessment. Plaintiffs paid a total tax of $1,550 plus interest at $356.50. Plaintiffs now claim a tax refund of $1,906.50 plus interest on the refund from date of payment.
Plaintiffs argue that Brothers Two, Inc. should be recognized as a separate corporate entity and as the purchaser of the vessel “Brothers Two.” As a result, if the purchase were made by this Delaware corporation, then, plaintiffs reason, no use tax liability can be attributed to the individual owners of the corporation in New Jersey. Secondly, plaintiffs claim that they are entitled to interest on their tax refund at the same rate of interest as that charged by the State when it imposed the tax deficiency assessment. On the other hand, defendant urges the court to disregard the corporate form of Brothers Two, Inc. because the actions of the taxpayers evidence that the corporation is merely a sham. Moreover, as sole owners of the corporation, defendant argues, plaintiffs had unrestricted use of the vessel, and therefore, despite alleged corporate ownership, they should be liable under the use tax statute. Defendant also counters that should the court decide that plaintiffs are entitled to a tax reimbursement, they cannot collect interest on their prior tax payment because there is no explicit statutory directive or equitable consideration requiring that interest be included with any mandated tax refund.
The New Jersey Sales and Use Tax Act, N.J.S.A. 54:32B-1 et seq., imposes a sales tax on the receipts from every retail sale of tangible personal property unless otherwise provided in the act. See N.J.S.A. 54:32B-3(a). For all tangible personal property purchased at retail for use within the State on which no New Jersey sales tax has been or will be paid, a compensatory use tax is imposed. N.J.S.A. 54:32B-6. N.J.S.A. 54:32B-2(h) defines “use” as:
The exercise of any right or power over tangible personal property by the purchaser thereof and includes but is not limited to, the receiving, storage or *243 any keeping or retention for any length of time, withdrawal from storage, any installation, any affixation to real or personal property, or any consumption of real property.
As a fiscal counterpart to the sales tax, “a primary purpose of the [use] tax is to prevent the State from losing revenue when tangible personal property purchased out-of-state and therefore not subject to New Jersey sales tax is nonetheless used here to the same extent as is property purchased here for which New Jersey sales tax is paid.” Diamondhead Corp. v. Taxation Div. Dir., 4 N.J.Tax 255, 258 (Tax Ct.1982); see also Hoffman-LaRoche v. Taxation Div. Dir., 5 N.J. Tax 154, 159 (Tax Ct.1983), aff'd in part, rev’d in part 192 N.J.Super. 552, 471 A.2d 786 (App.Div.1983). In addition, although the Legislature intended the use tax to prevent avoidance of the sales tax, any sales or use tax paid to another state constitutes a tax credit in computing New Jersey’s sales or use tax. N.J.S.A. 54:32B-11(6). The statute also provides for an exemption to the compensating use tax “[i]n respect to the use of property purchased by the user while a nonresident of this State.” N.J.S.A. 54:32B-11(2)
To support their primary argument that the corporate existence of Brothers Two, Inc. should be given legal recognition, plaintiffs assert that their activities both before and after incorporation indicate a bona fide intention to conduct a chartering business. They emphasize that all the documents concerning the sale, mortgage, and Coast Guard registration are in the name of the corporation. Since 1979, Brothers Two, Inc. has also remained a corporation in good standing in Delaware by filing corporate franchise tax returns and by paying the required corporate fees. Plaintiffs reason that despite the absence of any formal incorporation proceedings and the continuous inactivity of the corporation due to unforeseen business developments,[3] these facts alone should not undermine the validity of the corporation as a distinct legal entity. Thus, *244 plaintiffs conclude, since they intended a legitimate business purpose in creating the corporation and have complied with all the requisites to establish a separate corporate form, Brothers Two, Inc. should retain its nonresident corporate status, thereby exempting it and plaintiffs from any subjectivity to a New Jersey use tax pursuant to N.J.S.A. 54:32B-11(2).
Initially, defendant argues that “substance should prevail over form” when plaintiffs’ use of the corporate form is a mere sham. The Director points to a series of federal and state income tax cases demonstrating that when the corporate structure is adopted for tax avoidance purposes, the general rule is to disregard the form and reach behind the corporate facade to impose tax liability on the principals of the corporation. See, e.g., Gregory v. Helvering, 293 US. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935); Higgins v. Smith, 308 U.S. 473, 60 S.Ct. 355, 84 L.Ed. 406 (1939); Hay v. Commissioner, 145 F.2d 1001 (4 Cir.1944). Additionally, defendant maintains that plaintiffs’ activities before and after the formation of the corporation evidence a lack of true intent to pursue a legitimate business purpose. Finally, defendant contends, the total disregard of corporate ownership by plaintiffs’ unrestricted control over the vessel shows that the corporation was used as a “mere instrumentality” for the personal convenience and tax advantage of the corporate owners.
A fundamental rule of law is that the corporation is a separate entity with legal rights and liabilities distinct from those of its shareholders, directors, or officers. One of the principal objectives of incorporation is for the shareholders to achieve limited liability. To the extent, however, that some fraud, injustice or violation of public policy, law or contract will result, courts will disregard the legal separateness of the corporation and impose liability on the individuals associated with it. Lyon v. Barrett, 89 N.J. 294, 300, 445 A.2d 1153 (1982); State, Dep’t of Environ. Prot. v. Ventron, 94 N.J. 473, 500, 468 A.2d 150 (1983); Henn, Law of Corporations, (2 ed.1970) at 250; Fletcher, Cyclopedia of the Laws of Private *245 Corporations (Perm ed. 1983 rev. vol.) at 304-305. Whether the corporate form will be disregarded necessitates an independent determination based on the individual circumstances of each case.
The fact that a closely held corporation is owned by one or two shareholders or family members is not sufficient in and of itself to undermine the corporate identity. Furthermore, closely held corporations which provide limited liability to individuals and partners in business have been judicially recognized and legally accepted.
It is a well-settled rule that ownership of all or almost all the shares by one individual or a few individuals does not afford sufficient grounds for disregarding corporateness. However, the rule that corporateness will be sustained only so long as it is used for legitimate purposes has special significance when applied to the one-man, family, or other close corporation ... Even absent illegitimate purposes, the courts have conditioned recognition of corporateness on compliance with two requirements:
(a) Business must be conducted on a corporate not a personal basis;
(b) The enterprise must be established on an adequate financial basis. Sound policy considerations support these requirements. The shareholder who refuses to draw a line between his individual and corporate affairs is in a poor position to ask that the court effect what he failed to do. [Henn, op. cit., supra at 256-257]
One basic theory upon which the corporate entity may be disregarded is the alter ego doctrine. Generally, courts will regard the corporation as the alter ego of its shareholders, officers, or owners, when:
(1) the stockholders’ disregard of the corporate entity make it a mere instrumentality for the transaction of their own affairs;
(2) there is such a unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist;
(3) to adhere to the doctrine of the corporate entity would promote injustice or protect fraud.
The guiding principle is the protection of the government against evasion of taxes by the formation of a corporate paper entity. [Fletcher, op. cit., supra at 397, 546]
Other theories such as agency and the fiction of the corporate entity have provided alternative bases to penetrate the corporate shield of limited liability. See Mueller v. Seaboard Commercial Corp., 5 N.J. 28, 34, 73 A.2d 905 (1950); Seaview *246 Demolition, etc. v. Taxation Div. Director, 4 N.J. Tax 541, 548-550 (Tax Ct.1982). The figurative concepts of “piercing the corporate veil” and “disregard of the corporate fiction,” however, simply mean that there are various situations when an abuse of the corporate privilege exists and at these times corporate identity will be sacrificed.
The rule of law that has evolved in New Jersey is that the corporate form as a wholly distinct and separate entity will be upheld. Lyon v. Barrett, supra, 89 N.J. at 300, 445 A.2d 1153. It is only upon proof of some injustice or fraud that the court will go behind the corporate facade to impose liability on the individuals who control the corporation. Miller & Dobrin, etc., Co. v. Camden Fire, etc., Ass’n, 55 N.J.Super. 205, 217, 150 A.2d 276 (Law Div.1959). Moreover, the party seeking to pierce this corporate veil has the burden of proving “misuse of the corporate form and the necessity of disregarding it.” Kugler v. Koscot Interplanetary, Inc., 120 N.J.Super. 216, 253-255, 293 A.2d 682 (Ch.Div.1972). Accord Dep’t of Labor v. Berlanti, 196 N.J.Super. 122, 127, 481 A.2d 830 (App.Div.1984).
In a recent case, State, Dep’t of Environ. Prot. v. Ventron, 94 N.J. 473, 468 A.2d 150 (1983), the State alleged that a parent corporation was liable for violations of the Spill Compensation and Control Act, N.J.S.A. 58:10-23 et seq., by a subsidiary corporation. The court decided that the subsidiary had been created for a legitimate business purpose and that the various theories under which courts traditionally pierce the corporate veil were inapplicable in this particular case. Yet, under the broad liability coverage envisioned by the Legislature in promulgating the spill act, the court held that the parent corporation was jointly liable with the subsidiary. It reasoned that
The Legislature intended that the privilege of incorporation should not, ... become a device for avoiding statutory responsibility. A contrary result would permit corporations, merely by creating wholly-owned subsidiaries, to pollute for profit under circumstances when the Legislature intended liability to be imposed. [Id. at 502-503 (468 A.2d 150)]
Thus, the court concluded that the particular corporate form chosen by defendant would not be allowed to serve as a shield *247 against liability and supercede the purpose and intent of a legislative enactment.
Although plaintiffs profess that there was a bona fide intention to operate a charter business, the circumstances surrounding the initial formation of the corporation strain the credibility of their claim. Brothers Two, Inc., from its creation in 1979 never undertook any business activity as a separate corporate entity. Despite the fact that all the initial activities for “start up” of the charter business were performed in the name of the corporation, subsequent transactions necessary to maintain the corporate form, such as paying the mortgage, maintaining the vessel, and paying the corporate franchise taxes were undertaken through the personal financial resources of plaintiffs. Although the incorporation papers filed in Delaware in March 1979 listed the home port of the vessel as Wilmington, Delaware, two weeks later, while negotiating the purchase of the vessel, plaintiffs indicated on the financing agreement that the boat would be docked at Bricktown, New Jersey. In addition, plaintiff, Mario Coppa co-signed the bank loan with the corporation and used his personal address in New Jersey under the name of the corporation.
Plaintiffs obtained a local New Jersey insurance agent to insure the boat. Moreover, upon delivery in Staten Island, the vessel was sailed to the New Jersey marina where arrangements had been made for a mooring, and subsequently, no further plans were initiated by plaintiffs to take the vessel to Delaware.
Furthermore, the negative inferences that can be drawn from the testimony of plaintiff, John Coppa, far outweigh plaintiffs’ allegations that their true business intent and purpose was to conduct a charter boat service. No insurance policy was ever produced to show the supplemental coverage that would be a requirement for bareboat[4] charters. More important, not one *248 iota of evidence was put forth to show any contractual arrangements or negotiations between plaintiffs and a marina in the Wilmington, Delaware area to provision, maintain, or moor the vessel in Delaware waters. These inferences lend credence to the Director’s argument that no bona fide business purpose or intent existed even before the incorporation of Brothers Two, Inc.
From the outset, the lack of a clear distinction between the personal financial accounts, debts and assets of plaintiff and those of the corporation belie plaintiff’s claim that there was a bona fide intent to form a legitimate, separate business entity. At no time from its inception was Brothers Two, Inc. treated as a financially independent entity by plaintiffs. It was their personal credit and funds that kept the corporation solvent from its formation and for the six years thereafter. Plaintiff, Mario Coppa, co-signed the vessel loan agreement personally guaranteeing repayment of the loan. Both brothers provided the money for maintenance, storage, and operation of the vessel as well as for paying the mortgage debt. Consequently, the consistent intermingling of debts and assets of plaintiffs and the corporation evidences that Brothers Two, Inc. had no separate financial existence apart from that given by plaintiffs.
In addition, plaintiffs themselves never genuinely regarded the corporation as a separate business entity either before or after incorporation. They made no plans to operate the vessel from Delaware waters. With the exception of one vague advertisement in 1980,[5] they engaged in no advertising campaign to publicize or promote their charter service. No concrete plans were formulated to outfit the vessel for long distance hire. Considering these factors, plaintiffs knew that the charter service would never be a solvent, independent business. Moreover, plaintiffs continuously used the vessel for *249 their personal convenience and benefit for almost six years. This unity of ownership and unity of interest now militate against supporting the corporate fiction of Brothers Two, Inc. See Iron City Sand & Gravel Div. of McDonough Co. v. West Fork Towing Corp., 298 F.Supp. 1091 (N.D.W.Va.1969), rev’d on other grounds 440 F.2d 958 (4 Cir.1971) (“[I]n denying an independent status to [defendant], the court would only be recognizing the rule of law that when the corporate fiction is a mere simulacrum, an alter ego or business conduit of an individual, it may be disregarded in the interest of securing a just determination of an action.” Id., 298 F.Supp. at 1098-1099)
More significantly, there was never even the barest minimum of purposeful business activity to substantiate plaintiffs’ claim that the corporation was formed for a legitimate business purpose. John Coppa admitted that before delivery of the vessel in June 1979, plaintiffs had already abandoned their plans for operating any boat charter service. No matter what the purported advantage to incorporators under state law, courts generally will uphold the separate tax identity of the corporation, “so long as that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation.” Moline Properties, Inc. v. Comm’r of Internal Rev., 319 U.S. 436, 438-439; 63 S.Ct. 1132, 1134, 87 L.Ed.2d 1499, 1502 (1943).
In National Investors Corp. v. Hoey, 144 F.2d 466 (2 Cir. 1944), however, the court interpreted the holding in Moline Properties to mean, that “a corporation must engage in some industrial, commercial or other activity besides avoiding taxation; in other words, that the term ‘corporation’ will be interpreted to mean a corporation which does some ‘business’ in the ordinary meaning....” Id. at 468. See also U.S. v. Klein, 139 F.Supp. 135, 139 (S.D.N.Y.1955); aff’d 247 F.2d 908 (2 Cir. 1957), cert. den. 355 U.S. 924; 78 S.Ct. 365, 2 L.Ed.2d 354. Brown, Rudnick, Freed v. Bd. of Assessors, 389 Mass. 298, 450 N.E.2d 162 (Sup.Jud.Ct.1983).
*250 In Jackson v. Comm’r of Internal Rev., 233 F.2d 289 (2 Cir.1956), two corporations were formed merely to transfer and hold stock of other corporations. Plaintiff in that case argued that the corporate entity should be disregarded and the corporate transactions should be characterized as those of the individual stockholders. Although the court recognized that the corporations were formed merely to avoid taxation, it nevertheless formulated the following rule relative to disregarding corporate entities.
A corporation may not be disregarded in respect to taxation, if, inter alia, a bona fide intention in creating it was that the corporation itself should have some real substantial business function, or if it actually engages in business; on the other hand, the corporation may be disregarded, in the absence of such an intention or activity. The intended or actual business functioning of the corporation itself, not the taxpayer’s aim to be accomplished via the corporation, is the test. [Id. at 290]
The court also noted that “where there is such an intention (to have a real substantial business function), but the intended business functioning does not become effective, the corporation is not to be disregarded in the interval before it becomes evident that the corporation will not so function.” Id. at 290, n. 1, citing National Investors Corp. v. Hoey, supra. The Jackson court, however, distinguished Paymer v. Comm’r, 150 F.2d 334 (2 Cir.1945) stating that where a corporation was formed merely as a “passive dummy which did nothing but take and hold the title to real estate conveyed to it” to avoid creditors, it “was but a sham, to be disregarded for tax purposes.” Id. at 337.
Defendant charges that plaintiffs misused the corporate form when filing its corporate franchise tax returns in Delaware. It is true that by failing to declare the vessel “Brothers Two” as an asset of the corporation, plaintiffs minimized their corporate taxes in Delaware. At the same time plaintiffs stated to New York that the purchase was made by an out-of-state corporation to be exempt from its sales tax and designated the purchase of the boat as a nonresident corporation to avoid New Jersey’s use tax. This contradictory stance, defend *251 ant claims, demonstrates misuse of the corporate entity thereby denying legal recognition to Brothers Two, Inc.
If plaintiffs mistakenly reported the gross assets of the corporation to Delaware, then it is the responsibility of Delaware to see that the error is corrected. This tax error whether inadvertent or not in and of itself does not entitle New Jersey to collect a use tax from plaintiffs. It does, however, contribute as a factor for consideration when deciding whether there was a bona fide intent by plaintiffs to operate a distinct corporate business.
Defendant’s alternative argument that the unrestricted use of the vessel by plaintiffs personally requires them to pay a use tax to New Jersey has no foundation in the statute. The law requires all purchasers of tangible personal property to pay a use tax. See N.J.S.A. 54:32B-6 and -11(2). The argument therefore begs the main question: Who is to be considered the purchaser of the vessel “Brothers Two” — plaintiffs individually or the corporation? Cf. Cosmair, Inc. v. Taxation Div. Director, 8 N.J.Tax 9 (Tax Ct.1985) (construed the definition of “use” in N.J.S.A. 54:32B-2(h) only as applied to a manufacturer, processor or assembler in N.J.S.A. 54:32B-6(B) and the exceptions therein). If the corporation is the purchaser of the vessel then New Jersey cannot impose a use tax on a nonresident corporation that makes an out-of-state purchase. N.J.S.A. 54:32B-11(2). If, on the other hand, the corporation is merely a “paper” corporate personality, then plaintiffs would be liable for the tax.
In relation to the statutory construction of the Sales and Use Tax Act, this is a case of first impression. Most of the cases that have “pierced the corporate veil” to hold the principals of a corporation liable have dealt with operative, functioning corporations. In the present case, however, there is no extrinsic evidence to justify the conclusion that Brothers Two, Inc. was ever a viable corporation. Plaintiff, John Coppa, admitted that the plans to operate the charter business were scuttled before the boat ever reached its home port. Thus, in *252 effect, plaintiffs, by continuing to assert that the corporation was a legally recognizable entity, insulated themselves from tax liability.
A similar set of circumstances arose in Lewis Trucking Corp. v. Commonwealth of Virginia, 207 Va. 23, 147 S.E.2d 747 (Sup.Ct.App.1966). In that case, Marvin Lewis, a Virginia resident, operated a trucking business in Virginia and incorporated the Lewis Trucking Corporation in Delaware with himself as president and sole owner. By registering the truck trailers in Virginia in his own name, and the truck tractors in Delaware in the corporation’s name, he was able to circumvent the payment of the higher license fees on tractors in Virginia. The taxpayer admitted that his intent was “to avoid the almost prohibitive Virginia license tax by legal means.” Id., 147 S.E.2d at 750. The court concluded, however, that the Lewis Trucking Corporation was nothing more than the alter ego of the owner-operator, Marvin Lewis, “and that the transfer of title to the vehicles to his paper corporation was merely a device or sham to hide his ownership. It is well settled that such a corporate transfer cannot be used as a method of nullifying established policies of law.” Id., 147 S.E.2d at 753.
Public policy considerations also dictate that Brothers Two, Inc. be regarded as a mere instrumentality of plaintiffs. The Legislature’s purpose in enacting the compensatory use tax as a supplemental device to the sales tax was to insure that out-of-state purchases of tangible personal property used mainly by residents in the State would be subject to the same tax liability. The underlying policy was to prevent tax avoidance by merely crossing state lines to make purchases of tangible personal property that were taxable in-state. To permit plaintiffs to establish a paper corporation, in name only, that did not undertake even the barest minimal business activity and to thereby avoid the use tax would thwart the intent of the Legislature in promulgating the statute and be contrary to sound public tax policy.
*253 Based on the foregoing considerations and facts, I conclude that the absence of any purposeful business activity of Brothers Two, Inc. defeats plaintiffs’ claim that there was a legitimate business purpose in forming the corporate entity, Brothers Two, Inc. Plaintiffs are therefore liable for use tax under the New Jersey Sales and Use Tax Act.
Since plaintiffs are not entitled to a refund, there is no necessity to address their claim for interest. The Clerk of the Tax Court is instructed to enter judgment affirming the determination of the Director.

 John Coppa testified that in June 1979, a piece of highly desirable real estate adjacent to their gas station business in New Jersey became available. Investing $20,000 and borrowing approximately $330,000 to purchase the property and build a "superpumper" gas station imposed a strain on their capital and time thereby foreclosing any further development of their charter boat plans at that time.

 The witness did testify that an advertisement had been placed in a Wilmington, Delaware, newspaper in 1980, and they had received one inquiry concerning a boat charter, but no subsequent rental ensued.

 John Coppa testified that when the business became more favorable sometime in the future, he and his brother might consider reactivating their idea of a charter business.

 A bareboat charter is one in which a party rents a boat without a licensed captain.

 In response to counsel’s question on cross-examination regarding the specifics of an advertisement that plaintiff, John Coppa, had indicated was placed in a Delaware newspaper, he stated, “Yeah, I don't recall the date or the paper or anything like that. It was a one-time thing.”