**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-4632-16T1
                A-4805-16T1
                A-4954-16T1

JOYCE M. ANTHONY, Individually
and as Executrix of the Estate of
WILLIAM J. ANTHONY, JR., deceased
and WILLIAM J. ANTHONY, III,

      Plaintiff-Appellant,

v.

ONE SUN FARMS, LLC, ONE SUN
INDUSTRIES, LLC, SHIMP
INCORPORATED, JAMES ROSELL
TRUCKING, LLC,

      Defendants,

and

SOUTH STATE, INC., and
SEASHORE ASPHALT CORPORATION,

      Defendants-Respondents.

_____

GARY BRENNER and DESIREE
BRENNER, husband and wife,

      Plaintiffs-Appellants,

v.

ONE SUN FARMS, LLC, ONE
SUN INDUSTRIES, LLC, SHIMP
INCORPORATED, JAMES ROSELL
TRUCKING, LLC, NEWTON B.
SHIMP, III, GREG HOOVER, GRIFFIN
TRANSPORT, LLC, SEASHORE
ASPHALT, INC.,

     Defendants,

and

SOUTH STATE, INC., and
SEASHORE ASPHALT,
CORPORATION,

     Defendants-Respondents.

_____

ROBERT BOZZUTO and
SANDRA NILAN,

     Plaintiffs-Appellants,

v.

GREGORY HOOVER, ONE SUN
FARMS, LLC, a/k/a ONE SUN
INDUSTRIES, CS TRAILER
RENTAL, LLC, NEWTON B.
SHIMP, SHIMP, INC., JAMES
ROSELL TRUCKING, LLC,
GRIFFIN TRANSPORT, LLC,
SEASHORE ASPHALT, INC.,

     Defendants,

and

SEASHORE ASPHALT CORPORATION,
and SOUTH STATE, INC.,

     Defendants-Respondents.

AMBERLINE FAISON,

     Plaintiff,

v.

GREG R. HOOVER, ONE SUN
FARMS, LLC,

     Defendants.

Submitted October 3, 2018 – Decided January 17, 2019

Before Judges Alvarez and Reisner.

On appeal from Superior Court of New Jersey, Law Division, Atlantic County, Docket Nos. L-0998-14, L-1461-14, L-2513-15, and L-0826-16.

D'Arcy Johnson Day, attorneys for appellants Gary Brenner and Desiree Brenner in A-4632-16 (Richard J. Albuquerque, on the briefs).

Ross Feller Casey, LLP, attorneys for appellant Joyce Anthony in A-4805-16 (Joel J. Feller and Ryan P. Chase, on the briefs).

William A. Sheehan, attorney for appellants Robert Bozzutto and Sandra Nilan in A-4954-16.

3

A-4632-16T1

Chiesa Shahinian & Giantomasi PC, attorneys for respondent South State, Inc. (Christopher R. Paldino and Chelsea P. Jasnoff, on the briefs).

Golden, Rothschild, Spagnola, Lundell, Boylan & Garubo, PC, attorneys for respondent Seashore Asphalt Corp. (Rey O. Villanueva, of counsel and on the briefs).

PER CURIAM

In these back-to-back cases which we decide jointly, plaintiffs Joyce M. Anthony, individually and as executrix of the Estate of William J. Anthony, Jr., deceased, Gary Brenner and Desiree Brenner, and Robert Bozzuto and Sandra Nilan, appeal the November 30, 2016 grant of summary judgment dismissing with prejudice their personal injury claims against defendants Seashore Asphalt Corp. (Seashore) and South State, Inc. (South State). The judge expanded his analysis in a June 13, 2017 letter. We now affirm.

South State is in the business of highway construction, paving roads, and asphalt and sand production. It is registered with the United States Department of Transportation (DOT) because it owns and operates commercial vehicles incidental to its business operation. South State has a registration number with the DOT but not an interstate "operating authority" number because it is not a for-hire carrier in the business of transporting other companies' cargo. It is owned in part by Chester Ottinger, Jr. and in part by the Ottinger Family Trust.

Seashore is owned by Ottinger's wife, Mary Lou Ottinger. It is in the business of producing and delivering asphalt and supplying trucking services. During the relevant period, Seashore frequently provided trucks to South State for use in construction jobs.

At the time of the tragic accident on November 4, 2013, South State required certain portable concrete highway barriers, stored at a site near another project, in order to complete the construction of an exit ramp off the Garden State Parkway. A South State employee contacted Seashore, requesting vehicles for hauling the barriers. As Seashore did not have enough trucks available for the job, Seashore contacted One Sun. One Sun, a nursery business owned by Newton B. Shimp III, owns several trucks and occasionally leases vehicles to Seashore or South State. Shimp agreed to provide the necessary trucks to South State. South State, after the accident, paid for the delivery of the barriers.

While making the delivery, one of One Sun's part-time drivers, Greg R. Hoover, violated the company's policy prohibiting passengers—his girlfriend accompanied him that morning. On his return trip, Hoover failed to stop at a traffic light, striking several vehicles in the intersection, causing injuries, and finally, landing on top of an overturned car that had been stopped at the red light. One of the occupants of that vehicle died. Hoover's blood test results came back

positive for marijuana. Although at the time of the accident he held a valid commercial driver's license as well as a valid driver's license, he had a history of driving infractions.

## I.

On appeal, plaintiffs raise two points in essentially the same terms. First, plaintiffs allege that the trial court should have applied Federal Motor Carrier Safety Regulations (FMCSR) and denied South State summary judgment. Plaintiffs contend that South State falls within the FMCSR definition as a motor carrier engaged in interstate commerce and thus it is statutorily liable. Furthermore, plaintiffs argue, South State is vicariously liable under principles of respondeat superior and control because it was the statutory employer of Hoover and One Sun. Furthermore, Hoover was acting within the scope of his employment with South State when he caused the accident, and pursuant to common law principles of respondeat superior and "control" under New Jersey's law, South State is Hoover and One Sun's employer.

As to Seashore, plaintiffs allege that the company was negligent in hiring One Sun and Hoover without verifying their qualifications and suitability for the job—that Seashore had reason to know that One Sun was incompetent to haul highway barriers, and that Hoover was an incompetent driver. Plaintiffs further

A-4632-16T1

argue that summary judgment should not have been granted to Seashore because it is a corporate alter ego of South State and is therefore vicariously liable for Hoover's negligence. Pursuant to the statutory employee and control doctrine, Seashore is thus also vicariously liable for Hoover's negligence. Finally, plaintiffs assert as separate grounds that the State of New Jersey's formal adoption of the FMCSR makes the statutory employee doctrine applicable to Seashore, and the company is therefore liable for Hoover's negligence on that basis.

## II.

We review a grant of summary judgment de novo, applying the same standard used by the trial court. Rowe v. Mazel Thirty, LLC, 209 N.J. 35, 41 (2012) (citing Henry v. N.J. Dep't of Human Servs., 204 N.J. 320, 330 (2010)). Summary judgment is proper where there is no genuine issue of material fact, considering the evidence in the light most favorable to the non-moving party, and the moving party is entitled to prevail as a matter of law. Id. at 41 (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 529 (1995)); R. 4:46-2(c). Under this standard, "a court should deny a summary judgment motion only where the party opposing the motion has come forward with evidence that creates a 'genuine issue as to any material fact challenged.'" Brill, 142 N.J. at

7

529 (quoting R. 4:46-2). "Where the party opposing summary judgment points only to disputed issues of fact that are 'of an insubstantial nature,' the proper disposition is summary judgment." Ibid. (quoting Judson v. Peoples Bank & Tr. Co., 17 N.J. 67, 75 (1954)).

"When no issue of fact exists, and only a question of law remains, [the appellate court] affords no special deference to the legal determinations of the trial court." Cypress Point Condo. Ass'n v. Adria Towers, LLC, 226 N.J. 403, 415 (2016) (citing Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). However, "[p]urely legal questions . . . are questions of law particularly suited for summary judgment." Badiali v. N.J. Mfrs. Ins. Grp., 220 N.J. 544, 555 (2015) (citation omitted). "If a case involves no material factual disputes, the court disposes of it as a matter of law by rendering judgment in favor of the moving or non-moving party on the issue of liability or damages or both." Brill, 142 N.J. at 537 (citations omitted).

The trial judge's factual findings are "binding on appeal when supported by adequate, substantial and credible evidence." Rova Farms Resort v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974) (citing N.J. Tpk. Auth. v. Sisselman, 106 N.J. Super. 358 (App. Div. 1969)). Such factual findings are reviewed deferentially and left undisturbed unless "manifestly unsupported by or inconsistent with the

A-4632-16T1

competent, relevant and reasonably credible evidence as to offend the interests of justice." Ibid.

### III.

The Federal Motor Carrier Safety Administration is the United States Department of Transportation agency that regulates the trucking industry. In that capacity, it has issued the FMCSR. See 49 C.F.R. §§ 350 to -99. The trial judge did not explicitly find that South State was engaged in interstate commerce, however, he concluded instead that the FMCSR did not apply to the company because it was not an authorized motor carrier. Plaintiffs argue that South State engaged in interstate commerce defined as "[b]etween two places in a State as part of trade, traffic, or transportation originating or terminating outside the State or the United States." 49 C.F.R. § 390.5T (2017).

The term "interstate commerce" has a historically broad reach. See, e.g., Heart of Atlanta Motel, Inc. v. United States, 379 U.S. 241 (1964); Wickard v. Filburn, 317 U.S. 111 (1942). In considering the evidence in the light most favorable to the non-moving party, the judge may have assumed South State was engaged in interstate commerce. Brill, 142 N.J. at 529. That did not make South State liable, even applying the FMCSR. The FMCSR's general leasing requirements, which set forth the conditions under which an authorized carrier

may perform transportation in equipment it does not own, was not adopted by New Jersey. Those provisions are found in Part 376, which all parties agree have not been adopted. It is those leasing requirements which give rise to the "statutory employee" doctrine under which an authorized carrier may be held liable for the torts of an independent contractor. An authorized carrier is defined as "[a] person or persons authorized to engage in the transportation of property as a motor carrier under the provisions of 49 U.S.C. 13901 and 13902." 49 C.F.R. § 376.2(a). Thus, South State is not liable under this theory.

As the trial judge found, the definition excluded private motor carriers:

> South State engages in the transportation of property to further its construction business and is not a for-hire carrier. . . . South State does not offer its transportation services to be leased by other companies and is therefore not covered under 49 C.F.R. § 390.5. . . . South State is not an "authorized carrier" for the purpose of FMCSR's leasing provisions[.]

He also noted that "[o]ne of the many purposes of the FMCSR[s] . . . was to prevent motor carriers from transferring responsibility for compliance with federal regulations to independent contractors." That policy was not implicated in this circumstance.

IV.

Plaintiffs contend as an additional basis for imposing liability that South State should be held liable under the doctrine of respondeat superior. The trial judge, to the contrary, held that South State exercised no control over Hoover or One Sun sufficient to be considered either's employer.

The common law doctrine of respondeat superior imposes liability on an employer for the torts of his employees, even though the employer is not personally responsible. See Davis v. Devereux Found., 209 N.J. 269, 287 (2012). This doctrine has long been part of New Jersey law. Ibid. (citations omitted).

To establish an employer's liability for the acts of his employee, a plaintiff must prove: "(1) that a master-servant relationship existed and (2) that the tortious act of the servant occurred within the scope of that employment." Carter v. Reynolds, 175 N.J. 402, 409 (2003). The first prong focuses on the nature of the relationship between the parties. Ibid. If no master-servant relationship exists, no further inquiry is required. Ibid.; see also Wright v. State, 169 N.J. 422, 436 (2001) (noting that the doctrine of respondeat superior is necessarily based on the existence of a master-servant relationship).

It is well-established that "control by the master over the servant is the

A-4632-16T1

essence of the master-servant relationship on which the doctrine of respondeat superior is based." Wright, 169 N.J. at 436 (citing New Jersey Prop. Liab. Ins. Guar. Ass'n v. State, 195 N.J. Super. 4, 8 (App. Div.), certif. denied, 99 N.J. 188 (1984)). New Jersey recognizes Restatement (Second) of Agency § 220 (Am. Law Inst. 1958) as the "touchstone for determining who is a servant." Carter, 175 N.J. at 409. Section 220 provides:

> (1) A servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control.
>
> (2) In determining whether one acting for another is a servant or an independent contractor, the following matters of facts, among others, are considered:
>
>> (a) the extent of control which, by the agreement, the master may exercise over the details of the work;
>>
>> (b) whether or not the one employed is engaged in a distinct occupation or business;
>>
>> (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
>>
>> (d) the skill required in the particular occupation;
>>
>> (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f) the length of time for which the person is employed;

(g) the method of payment, whether by the time or by the job;

(h) whether or not the work is a part of the regular business of the employer;

(i) whether or not the parties believe they are creating the relation of master and servant; and

(j) whether the principal is or is not in business.

[Restatement (Second) of Agency § 220 (Am. Law Inst. 1958).]

"To prevent the issue of agency from reaching the jury, the owner must show by uncontradicted testimony that no employer-employee or principal-agent relationship existed, or, if one did exist, that the employee or agent had transgressed the bounds of his authority." Harvey v. Craw, 110 N.J. Super. 68, 73 (App. Div. 1970) (citations omitted). South State had no contract with One Sun, did not request Hoover as a driver, and did not have control over the means Hoover would employ to accomplish the task for which he was hired. One Sun, not South State, owned the truck that Hoover was driving when the accident occurred. One Sun retained the services of Hoover. Neither Hoover nor Shimp considered Hoover to be acting as South State's employee. The record is devoid of proof that any master-servant relationship existed between South State and

One Sun, or South State and Hoover. At the time of the accident, Hoover had already dropped off the highway barriers, and was in fact returning to One Sun's facilities. Thus, there was no genuine issue of material fact to be considered by a jury on the question of respondeat superior. South State had no employer-employee or principal-agent relationship with either One Sun or Hoover.

V.

Plaintiffs contend that the trial court erred in granting summary judgment in favor of Seashore because it is directly liable for its own negligence in hiring One Sun and Hoover. Generally, "where a person engages a contractor, who conducts an independent business by means of his own employees, to do work not in itself a nuisance[,] he is not liable for the negligent acts of the contractor in the performance of the contract." Mavrikidis v. Petullo, 153 N.J. 117, 131 (1998) (quoting Majestic Realty Assocs., Inc. v. Toti Contracting Co., 30 N.J. 425, 430-31 (1959)). However, Majestic carves out three exceptions to this rule: (1) if the principal reserves control "of the manner and means" of the contracted work, (2) where the principal hires an incompetent contractor, or (3) where the activity contracted for constitutes a nuisance per se. Mavrikidis, 153 N.J. at 134-37 (citing Majestic, 30 N.J. at 431).

In order to hold an employer liable under the second Majestic exception to the general rule of nonliability of principals, for the negligence of their independent contractors, the party bearing the burden must show both "(1) that the contractor was incompetent or unskilled to perform the job for which he was hired, and (2) that the principal knew or had reason to know of the contractor's incompetence." Id. at 137. Given this standard, plaintiffs argue that there was at minimum a genuine dispute over the extent of Seashore's liability in hiring One Sun and Hoover, such that the jury should have made the ultimate decision.

Plaintiffs assert One Sun was incompetent and unskilled as they are in the nursery business. But, the barriers had no unique characteristics that, as the judge observed, "require[d] a specialized carrier." The accident was unrelated to One Sun's ability or inability to haul the barriers. That was the task for which Seashore hired One Sun and Hoover, thus it could not be held liable for negligence from retaining them for that purpose.

A negligence claim requires a plaintiff to "establish four elements: (1) that the defendant owed a duty of care; (2) that the defendant breached that duty; (3) actual and proximate causation; and (4) damages." Fernandes v. DAR Dev. Corp., 222 N.J. 390, 403-04 (2015) (citing Townsend v. Pierre, 221 N.J. 36, 51 (2015)). Here, the accident happened when Hoover was returning to One Sun

15

with an empty truck.  Perhaps if the accident were caused by Hoover's inability to maneuver a truck filled with heavy concrete barriers, there would be at least a tenuous factual connection to plaintiffs' injuries.  But that was not the case.

Hoover was an incompetent driver, plaintiffs argue, and Seashore should have known this given his driving history. Hoover's publicly available driver license abstract does include multiple past violations, including failure to give a proper signal and careless driving.  However, plaintiffs do not cite to any authority imposing the requirement of performing a driver history search of another company's drivers, or even inquiring if the other company performs such searches.  Further, Hoover possessed a valid commercial driver's license while he was driving for One Sun, and thus was not seemingly unfit to drive as far as the State of New Jersey was concerned.  If he was clearly unfit and incompetent, arguably his license would have been suspended.

Hence, plaintiffs' characterization of One Sun and Hoover as incompetent to perform the task lacks support in the record.  The problem did not occur in the course of the delivery of the barriers.  Hoover caused the accident while violating the fundamental rule of the road that traffic signals be obeyed, that a motor vehicle operator not be under the influence, as well as a policy of his employer that passengers not accompany drivers.  Thus, Seashore was not the

A-4632-16T1

proximate cause of the accident, the negligence standard could not have been met, and summary judgment was properly granted.

## VI.

Finally, plaintiffs argue that Seashore and South State should not have been granted summary judgment on the theory that Seashore is a corporate alter ego of South State. The record is devoid, however, of any facts establishing that relationship either. Seashore was merely a middle man in the transaction that led to the tragic consequences, it was not the alter ego of South State.

The doctrine that would permit the piercing of the corporate veil, to the extent that individual shareholders can be personally held liable for debts of the corporation, is not met here. The corporation must be virtually indistinguishable from an individual or corporate shareholder, resulting in injustice to the corporation's debtors. See State, Dep't of Envtl. Prot. v. Ventron Corp., 94 N.J. 473 (1983); Mueller v. Seaboard Commercial Corp., 5 N.J. 28 (1950); Coppa v. Taxation Div. Dir., 8 N.J. Tax 236 (1986). "The purpose of the doctrine of piercing the corporate veil is to prevent an independent corporation from being used to defeat the ends of justice, to perpetrate fraud, to accomplish a crime, or otherwise to evade the law[.]" Ventron, 94 N.J. at 500 (citations omitted).

A-4632-16T1

To pierce the corporate veil, a plaintiff must prove that a subsidiary was "a mere instrumentality of the parent corporation" and "the parent so dominated the subsidiary that it had no separate existence but was merely a conduit for the parent." Id. at 500-01 (citations omitted). Then the plaintiff must prove that "the parent has abused the privilege of incorporation by using the subsidiary to perpetrate a fraud or injustice, or otherwise to circumvent the law." Id. at 501 (citing Mueller, 5 N.J. at 34-35).

Seashore is not a subsidiary of South State. The marriage between the Ottingers alone is not a basis for piercing the corporate veil. The two companies have an ongoing business relationship, but they are ultimately distinct entities. No fraud or injustice appears on the record, nor any other fact indicating the desire to circumvent the law on the part of either company. See ibid.

The alter ego doctrine is a stringent safeguard for when "the corporate form is used as a shield behind which injustice is sought to be done by those who have the control of it." Mueller, 5 N.J. at 34-35 (citation omitted). It is not meant to be invoked just because two companies and their respective owners are married. The judge recognized that "a close business relationship existed between Seashore and South State," but found that "there is nothing to suggest that Seashore was a corporate identity of South State used to circumvent the

A-4632-16T1

law."  He found that "Seashore was not created as a sham to disguise the use of South State's assets for the perpetration of fraud or to avoid liability. . . . [and] [n]othing suggests that Seashore was created for an illegitimate purpose."  The record supports these factual findings.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4632-16T1